# VAN REED v. PEOPLE'S NATIONAL BANK OF LEBANON.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF NEW YORK.

No. 229. Submitted April 25, 1905.—Decided May 29, 1905.

National banks are *quasi*-public institutions, and for the purpose for which they are instituted are national in their character, and, within constitutional limits, are subject to control of Congress, and not to be interfered with by state legislative or judicial action, except so far as Congress permits.

Under § 5242 Rev. Stat. a national bank, whether solvent or insolvent, is exempt from process of attachment before judgment in any suit, action or proceeding in any State, county or municipal court, *Pacific National Bank* v. *Mixter*, 124 U. S. 721, nor can a state court acquire jurisdiction over a national bank situated in another State by the process of attaching property within its jurisdiction under § 4 of the act of July 12, 1882.

THE plaintiff, who was the owner of a claim against the defendant, the People's National Bank of Lebanon, Pennsylvania, commenced an action in the State of New York by levying an attachment upon the funds of the defendant in that State, upon the ground that it was a foreign corporation. The defendant, appearing specially for that purpose, moved to have the attachment vacated upon the ground that it was prohibited by the Revised Statutes of the United States. At special term the motion was denied; the Appellate Division reversed the judgment of the special term and vacated the attachment. The Court of Appeals answered two questions certified to it by the Appellate Division and affirmed the judgment of that court. The two questions propounded are as follows, 173 N. Y. 314:

"1. Is the defendant exempt from attachment before judgment under section 5242, U. S. Revised Statutes?

"2. Are the rights claimed by plaintiff, to attachment against the defendant before judgment, and to the jurisdiction

thereby acquired, preserved and given by section 4 of the act of Congress of July 12, 1882?"

The Court of Appeals, in affirming the judgment of the court below, answered the first question in the affirmative and the second question in the negative. The case was then brought to this court upon writ of error.

*Mr. James W. M. Newlin* for plaintiff in error:

What is said in the opinion of this court in *Pacific National Bank* v. *Mixter*, 124 U. S. 721, that all attachments before judgment against national banks solvent or insolvent are void under § 5242, is not only *obiter* but contradicts the judgment of the court in the *Mixter case* itself, which upheld the jurisdiction of the court below, acquired against the non-resident national bank by reason of the attachments and sustained the judgments entered below in virtue of this jurisdiction, but restrained what was practically execution, viz., proceedings on the bond to dissolve the attachment the bank being itself insolvent.

The *Mixter case* has been questioned by this court. *Earle* v. *Pennsylvania*, 178 U. S. 449; *Earle* v. *Conway*, 178 U. S. 456. *Robinson* v. *Bank*, 81 N. Y. 385; *Raynor* v. *Bank*, 93 N. Y. 37.

All doubts must be resolved against the jurisdiction of the United States courts. *Petri* v. *National Bank*, 142 U. S. 649; *Joy* v. *St. Louis*, 122 Fed. Rep. 525; *United States* v. *Am. Bell Telephone Co.*, 159 U. S. 548.

Cases on defendant's brief, *Ex parte Jones*, 164 U. S. 693; *Garner* v. *National Bank*, 66 Fed. Rep. 371, make no reference to the acts of July 12, 1882, and August 13, 1888. And see *Hower* v. *Weiss*, 55 Fed. Rep. 356; *National Bank* v. *Buford*, 191 U. S. 119; *Norris* v. *National Bank*, 30 Ill. App. 54; *Kentucky* v. *Greer*, 13 Illinois, 432; *Holmes* v. *National Bank*, 18 S. Car. 37.

The act of July 12, 1882, introduces a new and unanswerable authority for the proposition that whatever may have been the former law, attachments against national banks, be-

fore judgment, when constituting the basis of jurisdiction, are now to be sustained. Had the defendant in the case at bar, been a foreign state bank, with funds here, the New York courts would clearly have had jurisdiction through attachment, to impound the funds. Hence under the act of 1882, the same jurisdiction exists over the funds of a foreign national bank.

If the prohibition of § 5242 be construed to include solvent banks, then the act of July 12, 1882, conflicts, and being the later statute, must prevail.

The trend of legislation is distinctly toward removing from national banks any class privilege, or legal advantage of any description whatever. *Petri* v. *National Bank*, 142 U. S. 644. For definition of word jurisdiction as used in this statute see 17 Am. & Eng. Ency. of Law, 2d ed., 1041, and cases cited. What was said in the *Mixter case* is now clearly *obiter*.

*Mr. Percy S. Dudley* for defendant in error:

A national bank is exempt from attachment before final judgment under § 5242, Rev. Stat.; §§ 52, 57, Currency Act of 1864, 13 Stat. 115, 116; act of March 3, 1873, 17 Stat. 603; *Robinson* v. *National Bank*, 81 N. Y. 385; *Raynor* v. *Pacific Nat. Bank*, 93 N. Y. 371; *National Bank* v. *Mixter*, 124 U. S. 721. The New York courts followed the *Mixter case* in *Bank of Montreal* v. *National Bank*, 112 N. Y. 667.

In Massachusetts an injunction against a solvent national bank was denied, on the authority of the *Mixter case*. *Freeman Mfg. Co.* v. *Nat. Bank of Republic*, 160 Massachusetts, 398.

In Vermont it is held that national banks were not subject to attachment or injunction before final judgment. *Safford* v. *Nat. Bank*, 61 Vermont, 373; *Hazen* v. *Lyndonville Nat. Bank*, 70 Vermont, 543.

In Minnesota it has been held that an attachment against a national bank in another State was void. *First Nat. Bank* v. *La Due*, 39 Minnesota, 415. So in Tennessee. *Rosenheim Co.* v. *Southern Nat. Bank*, 46 S. W. Rep. 1026. See also

*Planters' Loan &c. Bank .v. Berry,* 91 Georgia, 264; *Dennis* v. *First Nat. Bank of Seattle,* 127 California, 453; *Garner* v. *Second Nat. Bank,* 66 Fed. .Rep. 369.

The decision in the *Mixter case* was not questioned, even indirectly, in *Earle* v. *Pennsylvania,* 178 U. S. 449; *Earle* v. *Conway,* 178 U.. S. 456. The point was clearly not involved in those cases.

The act of July 12, 1882, § 4, did not repeal these provisions of § 5242, Rev. Stat., or give any new or different rights to creditors of national banks in regard to provisional remedies. 22 Stat. 162. See cases cited *supra* and *Petri* v. *Bank,* 142 U. S. 644; *National Bank* v. *Buford,* 191 U. S. 119, 123. As held by the Court of Appeals Congress did not intend to regulate the method of commencing an action so as to enable a state court to acquire jurisdiction over the property of a national bank without acquiring jurisdiction of the bank itself. *Raynor* v. *Nat. Bank,* 93 N. Y. 371; *Manufacturing Co.* v *National Bank,* 160 Massachusetts, 398; *Pacific Nat. Bank* v. *Mixter,* 124 U. S. 721.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

We deem the answer to the first question already determined by the decision of this court in *Pacific National Bank* v. *Mixter,* 124 U. S. 721. The right of Congress to determine to what extent a state court shall· be permitted to entertain actions against national banks and how far these institutions shall be subject to state control, is undeniable. National banks are quasi-public institutions, and for the purpose for which they· are instituted are national in their character, and, within con- stitutional limits, are subject to the control of Congress and are not to be interfered with by state legislative or judicial action, except so far as the lawmaking power of the Government may permit. ·Section 5242 of the Revised Statutes of the United States is as follows:

"All transfers of the notes, bonds, bills of exchange, or other

evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any state, county, or municipal court." 3 Compiled Statutes, 1901, p. 3517.

The language of the latter clause of this section would seem to be too plain to admit of discussion as to its meaning. It in terms forbids the issuing of an attachment, injunction or execution against a national bank or its property before final judgment in any suit, action or proceeding in any State, county or municipal court. This was the view taken by this court in *Bank* v. *Mixter, supra.* The origin of section 5242, and its growth from previous enactments were pointed out by Mr. Chief Justice Waite, who delivered the opinion of the court in that case:

"It is clear to our minds that, as it stood originally as part of §57, act of 1873, and as it stands now in the Revised Statutes, it operates as a prohibition upon all attachments against national banks under the authority of the state courts. . . . It stands now, as it did originally, as the paramount law of the land that attachments shall not issue from state courts against national banks, and writes into all state attachment laws an exception in favor of national banks. Since the act of 1873 all the attachment laws of the State must be read as if they contained a provision in express terms that they were not to apply to suits against a national bank."

Since the rendition of that decision it has been generally followed as an authoritative construction of the statute holding that no attachment can issue from a state court before judgment against a national bank or its property. *Freeman Manufacturing Co.* v. *National Bank of the Republic*, 160 Massachusetts, 398; *Planters' Loan and Savings Bank* v. *Berry*, 91 Georgia, 264; *First National Bank of Casson* v. *La Due*, 39 Minnesota, 415; *Safford* v. *First National Bank of Plattsburg*, 61 Vermont, 373; *Rosenheim Real Estate Co.* v. *Southern National Bank*, 46 S. W. Rep. [Tenn.] 1026; *Garner* v. *Second National Bank of Providence*, 66 Fed. Rep. 369. It is argued by the plaintiff in error that the decision in the *Mixter case, supra,* should be limited to cases where the bank is insolvent; but the statement of facts in that case shows that at the time when the attachment was issued the bank was a going concern and entirely solvent so far as the record discloses. The language of Chief Justice Waite, above quoted, is broad and applicable to all conditions of national banks, whether solvent or insolvent; and there is nothing in the statute, which is likewise specific in its terms, giving the right of foreign attachment as against solvent national banks. We find nothing in the case of *Earle* v. *Pennsylvania*, 178 U. S. 449, which qualifies the decision announced in the *Mixter case.* We therefore conclude that the *Mixter case* is applicable here, and the decision therein announced meets with our approval.

The answer to the second question involves a consideration of the act relating to national banks of July 12, 1882, § 4, 22 Stat. 162, which is as follows:

"That any association so extending the period of its succession shall continue to enjoy all the rights and privileges and immunities granted and shall continue to be subject to all the duties, liabilities, and restrictions imposed by the Revised Statutes of the United States and other acts having reference to national banking associations, and it shall continue to be in all respects the identical association it was before the extension of its period of succession: *Provided, however,* That the juris-

diction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States, which do or might do banking business where such national banking associations may be doing business when such suits may be begun: and all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed."

There is nothing to this section enlarging the right of attachment against national banks. Before the passage of this section Circuit Courts of the United States had jurisdiction of suits against national banks because they were corporations of Federal origin. It was the purpose of this legislation to deprive such banks of the right to invoke the jurisdiction of the Federal courts simply upon the ground that they were created by and exercised their powers under the acts of Congress. *Petri* v. *Commercial Bank*, 142 U. S. 644; *Continental National Bank* v. *Buford*, 191 U. S. 119, 123. It regulated the jurisdiction of the courts to entertain such actions against corporations of this character, and had nothing to do with the kind and character of remedies which could be had against them. Certainly there is nothing in the act repealing the prior provisions of section 5242, above quoted.

It is further insisted that whether or not the lien is absolute upon the property of the bank, jurisdiction is obtained of it by the issuing of the attachment; but we cannot take this view. There was no personal service in the court of original jurisdiction, and the attachment being without the power of the court by reason of the terms of the Federal statute, no jurisdiction was acquired in the case, either over the person or property of the defendant. We see no error in the judgment of the Court of Appeals of New York, and the same is

*Affirmed.*