HARTMAN et al. v. KEYS. (No. 8754.)

(Court of Civil Appeals of Texas. Ft. Worth. June 30, 1917. Rehearing Denied Oct. 13, 1917.)

BANKS AND BANKING ☞287(4) — NATIONAL BANKS—ACTIONS AGAINST RECEIVERS—INJUNCTION.

Under Rev. St. U. S. § 5242 (U. S. Comp. St. 1916, § 9834), providing that no attachment, injunction, or execution shall be issued against a national banking association or its property before final judgment in any suit or action in any state, county, or municipal court, the court had no authority to grant a preliminary injunction in a suit against the receiver of a national bank to enjoin him from suing on a note given by directors to make good an impairment of the capital of the bank.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Suit by J. W. Hartman and others against Paul C. Keys, receiver. From an order dissolving a preliminary injunction, plaintiffs appeal. Affirmed.

J. J. Butts, of Cisco, for appellants. D. K. Scott, of Cisco, for appellee.

CONNER, C. J. This appeal is from an order in chambers of the Hon. Joe Burkett, judge of the Forty-Second judicial district, dissolving a preliminary writ of injunction theretofore issued in the above-styled cause. Appellants J. W. Hartman, W. W. Moore, J. A. Chesley, and J. J. Butts, who sought and obtained the original writ of injunction, alleged in their petition therefor the following facts, briefly and substantially stated, viz.: That on the 13th day of October, 1913, the Merchants' & Farmers' National Bank of Cisco, Tex., was a banking corporation organized and created under and by virtue of the laws of the United States authorizing the incorporation of national banks, and then was and for a long time prior thereto had been engaged in the banking business at Cisco; that such business continued until on the ——— day of November, 1915, when the bank became insolvent and its assets were placed in the hands of Paul C. Keys, as receiver, by the Comptroller of Currency of the United States; that one J. Alexander together with the plaintiffs were members of and constituted the board of directors of said bank and were acting as such at the time the bank was placed in the hands of a receiver, as stated; that the defendant, Paul C. Keys, qualified as such receiver and was continuing to so act at the time of exhibiting the petition for the injunction. It was further alleged that theretofore, on the 13th day of October, 1913, one Hutt, a national bank examiner, made an examination into the condition of the bank, and then and there directed and required the board of directors to charge off certain bills receivable then being carried on the books of the bank as assets, which was then and there accordingly done; that the effect was to impair the capital of the bank to the extent of $2,500, which said bank examiner required to be made good, either by an assessment to be levied upon the shares of the capital stock of the bank or otherwise; that the board of directors fearing that an assessment on the shares of the stock of the bank would, should the fact become known, seriously militate against the interest of the bank and probably result in a run being made on it, finally, as was suggested could be done, executed a joint note payable to the bank for an amount sufficient to cover the impairment of the capital stock caused by charging off unapproved assets, as stated. It was alleged that said note was in the sum of $2,500, and was executed by the petitioners, together with the said J. Alexander and W. H. Tebbs, cashier; that the sole purpose and consideration of the note was to prevent and avoid an assessment being made on the shares of stock in the bank and for the protection and accommodation of the stockholders and of each and every one of them, and for no other purpose, and that, accordingly, all stockholders by an agreement in writing alleged to be in the possession of the defendant receiver, consented and agreed that the note could be paid out of the earnings of the bank; that thereafter the sum of $500 had been paid on the note so executed out of the earnings of the bank, and the note was renewed and the time of payment extended by the execution of a new note for the sum of $2,000, the new note, as was the old, being made payable to the bank, and which it was alleged was now held by the defendant receiver. It was further averred that the receiver had collected the sum of $300 on the bills receivable that had been charged off which had been credited on the $2,000 note, but that the remainder was unpaid; that since the appointment of the receiver no assessment had ever been made against the shares of the stock of the bank; that at least 50 per cent. of the assets of the bank were still in the possession of the receiver, and it was believed that from such assessment and the proceeds of such assets all liabilities of the bank could be extinguished without resort to the unpaid balance on said $2,000 note, but notwithstanding which it

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was charged that the receiver was threatening to sue the petitioners for a recovery, and the injunction was sought in order to restrain him from so doing, until, at least, it should become necessary, if at all, after having exhausted lawful assessments against the stockholders and their assets in the hands of the receiver.

As indicated, upon presentation of the petition, which was duly verified, an order therefor was duly made and a preliminary writ of injunction was duly issued, enjoining the receiver in terms as prayed for, but thereafter the receiver presented his motion to dissolve the injunction, which motion was sustained, the injunction dissolved, and this appeal prosecuted, as stated.

It appears that the writ was dissolved on the ground that the court, under the circumstances alleged, was not authorized to issue the writ, and in so determining we think the honorable judge ruled correctly. Section 5242 of the Federal Statutes Annotated, vol. 5, bottom page 188, is as follows:

"All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction, or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any state, county, or municipal court."

The history of the section is traced by the Supreme Court of the United States in the case of Pacific National Bank of Boston v. Mixter, 124 U. S. 721, 8 Sup. Ct. 718, 31 L. Ed. 567, and the conclusion there reached was that the provision that "no attachment, injunction, or execution shall be issued against such association, or its property, before final judgment in any suit, action or proceeding, in any state, county, or municipal court," operates as a prohibition upon all attachments against national banks under the authority of a state court. That the provision "stands now, as it did originally, as the paramount law of the land that attachment shall not issue from state courts against national banks, and writes into all state attachment law an exception in favor of national banks. Since the act of 1873 all the attachment laws of the state must be read as if they contained a provision in express terms that they were not to apply to suits against a national bank." It is impliedly conceded, as indeed it must be, that what was thus said by the Supreme Court of the United States applies with equal force to writs of injunction; the prohibitory words of the section applying to writs of attachment and to writs of injunction alike.

Appellants' only contention in this respect is that what was said in the case of the Bank v. Mixter in relation to the want of power in state courts to issue the writs referred to against a national bank was not necessary to the decision in that case, and hence obiter, and of no binding force, and the case of Robinson v. National Bank of New Berne, 81 N. Y. 385, 37 Am. Rep. 508, is cited in opposition. In the latter case the plaintiff, who resided in the state of New York, was a creditor of the defendant National Bank located in North Carolina, and instituted a suit in the state court of New York against the defendant, and procured the issuance of a writ of attachment, and caused the same to be levied upon property of the defendant in the state of New York. The defendant moved to dissolve the attachment on the grounds: (1) That the state court had no jurisdiction over the action; and (2) that it had no jurisdiction to grant the writ of attachment. The trial court held that it had jurisdiction and upheld the attachment proceedings, and on appeal to the Court of Appeals the judgment of the trial court was sustained. The appellate tribunal of New York, after reviewing section 5242 of the Federal Statutes, concluded that the object of the entire section is to prevent one creditor of a corporation whose assets are insufficient to meet its liabilities from obtaining a preference, whether it is sought through a voluntary assignment or in the form of a legal proceeding, and that, hence, the case before it not being one of that kind, the court below had the power to issue the attachment there under consideration. The New York decisions are not available to us, but we infer from references in decisions before us that the holding in the case of Robinson v. National Bank was later abandoned by the appellate courts of that state. At all events, it must, we think, be held no longer maintainable even there. See Henry Van Reed, Plaintiff in Error, v. People's National Bank of Lebanon, Pa., 198 U. S. 554, 25 Sup. Ct. 775, 49 L. Ed. 1161, 3 Ann. Cas. 1154. The case last cited was one in error to the Court of Appeals of the state of New York reviewing a judgment of the appellate tribunal vacating attachment proceedings issued in behalf of the plaintiff in error. In disposing of the appeal, the Supreme Court of the United States, among other things, said:

"The right of Congress to determine to what extent a state court shall be permitted to entertain actions against national banks and how far these institutions shall be subject to state control is undeniable. National banks are quasi public institutions, and for the purpose for which they are instituted are national in their character, and, within constitutional limits, are subject to the control of Congress and are not to be interfered with by state legislative or judicial action, except so far as the lawmaking power of the government may permit."

The court then quotes section 5242, to which we have referred, and further says:

"The language of the latter clause of this section would seem to be too plain to admit of discussion as to its meaning. It in terms forbids the issuing of an attachment, injunction, or execution against a national bank, or its property, before final judgment in any suit, action, or proceeding in any state, county, or municipal court."

And the case of National Bank v. Mixter, hereinbefore mentioned, was expressly cited with approval, and with reference to that case it was said:

"Since the rendition of that decision, it has been generally followed as an authoritative construction of the statute holding that no attachment can issue from a state court before judgment against a national bank or its property."

And cases from Massachusetts, Georgia, Minnesota, Vermont, Tennessee, and a federal decision are cited in support of the statement. See, also, Freeman Mfg. Co. of North Adams v. National Bank of Republic of Boston, 160 Mass. 398, 35 N. E. 865, by the Supreme Judicial Court of Massachusetts, and Meyer et al. v. First National Bank of Cœur d'Alene et al., 10 Idaho, 175, 77 Pac. 334, by the Supreme Court of Idaho, in both of which cases an asserted right to an injunction against national banks was expressly denied on the authority of section 5242 of the Federal Statutes, and of the decision in the case of National Bank of Boston v. Mixter, and of other cases cited.

We conclude that the equities of appellants' petition are only available after final judgment in the receivership case, and that in the meantime no authority on the part of the state court exists to interfere with the custody and control of the receiver of the note executed by appellants to the Cisco National Bank, either by attachment, injunction, or otherwise.

The order of the court below, therefore, dissolving the injunction, is in all things affirmed.