# MECHANICS UNIVERSAL JOINT CO. ET AL. *v.* CULHANE, RECEIVER.

No. 17.  Argued October 14, 15, 1936.—Decided November 9, 1936.

*Mr. Samuel R. Kenworthy* for petitioners.

*Messrs. Roy F. Hall* and *George P. Barse,* with whom *Mr. John F. Anderson* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Section 5242 of the Revised Statutes of the United States, 12 U. S. C. § 91 provides that payments made by a national bank "in contemplation" of the commission of an act of insolvency, "with a view to the preference of one creditor to another" "shall be utterly null and void." [1]

---

[1] The Section provides: "All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution, shall be issued

This suit was brought in the federal court [2] for northern Illinois by the receiver of the Manufacturers National Bank and Trust Company of Rockford, in that State, to recover, as such preference, the proceeds of a check for $42,761.12 drawn on the bank by the Mechanics Universal Joint Company of that city and paid to it.  The answer denied that the bank was then insolvent; that it was known by its officers and directors to be so; that they contemplated the imminent necessity of its closing; and that the payment was made with a view to a preference. On these issues much evidence was introduced.  The District Court, making detailed findings of fact, found on all those issues for the plaintiff, and entered a decree accordingly.  The Court of Appeals, accepting the findings made by the trial court, affirmed the decree.  80 F. (2d) 147. We granted certiorari, because of the importance of the question whether the relation of the parties was such as to render the payment unlawful.  We accept the findings, as there was ample evidence to support them, and none of the objections to the admission of evidence is substantial. *Pick Manufacturing Co.* v. *General Motors Corp., ante,* p. 3.

On Friday, June 12, the balance in the Company's account in the Manufacturers Bank was $65,224.30.  On that day the check for $42,761.12 was drawn, payable to the Third National Bank of Rockford, where it also had a general checking account, and was sent for deposit in that account.  On Saturday, the 13th, the check was paid through the clearing house.  Never before had the Company transferred money from its checking account in the

against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

[2] See 28 U. S. C § 41, (1), (16); *Commonwealth Trust Co.* v. *Bradford,* 297 U. S. 613, 617.  Compare *Bowerman* v. *Hamner,* 250 U. S. 504.

Manufacturers Bank to its general checking account in the Third National. On June 12 and 13, 1931, the Manufacturers Bank conducted its business as usual. It accepted deposits; honored all checks, whether presented through the clearing house or otherwise; and paid all demands upon it. It had not committed any "act of insolvency." But it was, in fact, insolvent; and was known by its officers to be so. On June 13, it closed its doors at the conclusion of regular banking hours and it did not thereafter open them. On June 16, the Comptroller of the Currency certified that the bank was insolvent and appointed a receiver.

The check was executed by Ekstrom, the president and manager of the Company, who then was, and for two years had been, a director of the Manufacturers Bank. He knew its precarious condition. He knew that for some time prior to June 12 the bank had been on the special list of the Comptroller of the Currency for frequent examination and report. As early as January 8, 1931, the Comptroller had called the bank's attention to its unsatisfactory condition. In a letter dated May 28, 1931, he pointed out "its present dangerous situation" and "potential losses that threaten its solvency." Ekstrom, as director, had examined the reports of the bank's condition made by the National Bank Examiner; had read the letters from the Comptroller; and had been present at an informal meeting of the board, held upon request of the Examiner, on June 12 between eleven and twelve o'clock in the morning. The Examiner attended the meeting; discussed the bank's condition; advised its officers and the directors that there would be a run on the Rockford banks on the following Monday; and told them "that the cash position of the Manufacturers Bank was so low that it could not stand a run of one business day." The directors authorized him "to talk over the affairs of the Manufacturers Bank with a view to having said bank

taken over by some other bank in Rockford"; and appointed a committee to that end. Ekstrom participated in that action. Shortly after leaving the meeting, he signed the check and caused it to be sent by mail for collection.

*First.* The Company contends that, even if Ekstrom's purpose was to obtain for his Company a preference over other creditors, the withdrawal of the deposit was not unlawful. The argument is (a) that in drawing the check, and thus causing its payment, Ekstrom acted not as director of the bank but as president of the Company; (b) that he was neither an employee of the bank, nor specifically authorized as a director to make payment of the check; (c) that this payment was but one with many others which the bank made on the days involved, in the ordinary course of business, and not in contemplation of the commission of an act of insolvency; (d) that the payment cannot be held to have been made by the bank in contemplation of insolvency "with a view to prefer one creditor to another," since this check was paid, like others, in the usual course, without intention on the part of the bank's managing officers to prefer the Company; (e) that the wrongful action, if any, was that of Ekstrom in using for his Company's benefit knowledge obtained in confidence as director of the bank; but (f) that such breach of duty of a director does not entitle the receiver to recover, because the liability sought to be enforced is wholly statutory, and the statute does not provide that payments to a depositor on withdrawal made pursuant to confidential information obtained as bank director shall be void. The contention is unsound.

One of the objects of the national bank system is to secure, in the event of insolvency, a just and equal distribution of the assets of national banks among unsecured creditors, and to prevent such banks from creating preferences in contemplation of their failure. Compare *Na-*

*tional Bank* v. *Colby,* 21 Wall. 609, 613–614; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 284, 290. To that end R. S. § 5242, 12 U. S. C. § 91, prohibits preferential payments. That prohibition is not directed solely to managing officers. The duty not so to defeat the just and equal distribution of the assets commanded by the Act rests upon all who obtain such knowledge by reason of their connection with the bank—upon directors and employees as well as upon the executive officers.[3] By R. S. § 5147, 12 U. S. C. § 73, each director is required to take an oath that he "will not knowingly violate or willingly permit to be violated any of the provisions of this title." *Finn* v. *Brown,* 142 U. S. 56, 68. Ekstrom violated his oath and the duty under R. S. § 5242 which it imposed, when he used knowledge of the bank's perilous condition, gained in his position of trust, to cause the withdrawal of funds by his Company, with a view to assuring it a preference over other depositors who lacked that knowledge.

We have no occasion to decide whether a stranger would be liable as for a preference, if, without suggestion from any officer or employee of the bank, he withdrew his deposit because of rumor or suspicion of insolvency. It is true that ordinarily a payment made by a bank to a depositor in the usual course of business is not recoverable, even though the bank was then clearly insolvent. Compare *McDonald* v. *Chemical National Bank,* 174 U. S. 610. But the payment here in question was not made in the usual course of business; and the Company was not a stranger. Its president and manager was a director of the bank; as such acquired in confidence knowledge

---

[3] See *Smith* v. *Baldwin,* 63 App. D. C. 72; 69 F. (2d) 390; *Schilling* v. *Sieroty,* S. D. Cal., Cent. Div., August 21, 1934. Compare *American Surety Co.* v. *Jackson,* 24 F. (2d) 768; *Isaacs* v. *Stock,* 66 F. (2d) 928; *Rucker* v. *Kokrda,* 68 F. (2d) 73, 74; *Pearson* v. *Durell,* 77 F. (2d) 465, 467.

of its perilous condition; and, in violation of his statutory duty as director, used that knowledge for the purpose of preferring his Company. If the deposit withdrawn had been in Ekstrom's own name, he would, obviously, have been obliged to return it. The Company is in no better position. Compare *McCaskill Co.* v. *United States,* 216 U. S. 504; *Curtis, Collins & Holbrook Co.* v. *United States,* 262 U. S. 215. As it is liable under the statute, we have no occasion to decide whether it would be liable also on general principles of law or equity. Compare *Yates* v. *Jones National Bank,* 206 U. S. 158, 178; *Bowerman* v. *Hamner,* 250 U. S. 504, 510.

*Second.* Ekstrom was joined with the Company as co-defendant and was held liable with it, jointly and severally. For such personal liability there was ample basis. Knowing that the bank was in imminent danger of closing, it was Ekstrom's duty as director to conserve the assets for the benefit of all unsecured creditors—or specifically not to use that knowledge confidentially obtained to prefer his Company. He depleted the assets by causing the preference to be given; and thus violated the duty under R. S. § 5242, which he had sworn to perform. Compare *Bowerman* v. *Hamner,* 250 U. S. 504.[4]

*Third.* The Company sought by counterclaim to recover $20,034.12, the balance remaining after deducting from the aggregate of its deposits between May 6, 1931, and June 13, 1931 the checks drawn and paid in that period, including the check for $42,761.12 here in question. The claim is that when these deposits were made the bank was insolvent; that the deposits had been obtained fraudulently by impliedly representing (through keeping the bank open) that it was solvent; and that hence, the title to so much of them as came into the hands of the receiver

---

[4] Ekstrom having died January 12, 1936, his administratrix, Grace M. Ekstrom, was substituted as appellant.

remained in the Company, and could be followed as a trust fund. The Circuit Court of Appeals stated that it affirmed the action of the trial court dismissing the counterclaim on the ground that no fraud had been practiced by the bank on the Company and that "it was not an innocent depositor by reason of the acts of its president." The receiver gives additional reasons in support of that action. We have no occasion to enter far into the enquiry. Throughout the litigation the Company has insisted that the bank was still solvent on June 12 when the check in question was drawn, and on June 13 when it was paid. As to those dates the findings are to the contrary. But there is no finding that prior to June 12 the bank was insolvent, or that prior to the discussion at the informal directors' meeting its executive officers or directors believed it to be so. The evidence is clearly consistent with the conclusion that between May 6 and June 7 it was believed to be solvent. The counterclaim was properly dismissed. Compare *St. Louis & San Francisco Ry. Co.* v. *Johnston*, 133 U. S. 566, 576; *Easton* v. *Iowa*, 188 U. S. 220, 232.

*Fourth.* The decree entered was for $25,216.45. That sum was arrived at by deducting from the $42,761.12 withdrawn, the aggregate amount of the dividends which would have been paid by the receiver to the Company thereon if that sum had remained on deposit, adding interest at 5 per cent to both the debit and the credits. The receiver contends that the defendants were wrongly credited with interest on the dividends, because no dividend was payable until full restitution with interest had been made of the illegal preference; and then only after proof of the Company's claim. We have no occasion to consider this alleged error in the decree as the receiver did not file a cross-petition for certiorari. Compare *Federal Trade Comm'n* v. *Pacific States Paper Trade Assn.,*

273 U. S. 52, 66; *Charles Warner Co.* v. *Independent Pier Co.,* 278 U. S. 85, 91; *Lloyd Sabaudo Societa Anonima* v. *Elting,* 287 U. S. 329, 331.   Moreover, this claim was not made below in either court.

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.