IMPAC LIMITED, INC., et al.,
Appellants,

v.

THIRD NATIONAL BANK and First and Mid-South Mortgage Company,
Appellees.

Supreme Court of Tennessee.

Aug. 16, 1976.

Gail P. Pigg, Nashville, for appellant.

Thomas P. Kanaday, Jr., Stephen W. Ramp, Farris, Evans & Warfield, Nashville, for appellees.

## OPINION

FONES, Justice.

The question presented by this interlocutory appeal is whether a section of the National Bank Act prohibits a state court from issuing an injunction against a national bank, as mortgagee, temporarily restraining it from foreclosing upon appellant's property.

Appellant brought this action against appellee in the Chancery Court of Davidson County when appellee declared appellant in default on a note secured by a deed of trust on real property and advertised the property for sale, pursuant to terms contained in the deed of trust. Appellant sought to enjoin appellee from proceeding with the foreclosure sale and set forth the grounds upon which it sought the injunction. The Chancellor found, upon the pleadings, exhibits, and arguments of counsel at the show cause hearing, that there existed issues which should be determined upon a full hearing; and that appellants would suffer irreparable harm if the foreclosure sale occurred prior to the hearing. Upon these findings, the Chancellor issued a temporary injunction prohibiting appellee from foreclosing on appellant's property prior to a full hearing on the merits of the cause.

Appellee then moved the Trial Court to dissolve the temporary injunction on the basis that 12 U.S.C.A. § 91, denied the Court jurisdiction to issue the injunction. The motion was granted, and the Chancellor allowed appellant a discretionary appeal to this Court.

The statute upon which appellee relies, reads as follows:

§ 91. *Transfers by bank and other acts in contemplation of insolvency*

All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction, or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court.

Appellee maintains that this statute, and the case law construing it, prohibits the

courts of this State from issuing an interlocutory injunction against a national bank under any circumstances. This view necessarily encompasses the position that regardless of the degree of wrongdoing on the part of a national bank against one of its debtors, resulting in irreparable damage, our courts, both state and federal, are prohibited from exercising jurisdiction and allowing an equitable remedy until a full trial on the merits of the cause has been completed. We cannot accept appellee's position as a correct exposition of the law.

The leading case construing the statute is *Pacific National Bank of Boston v. Mixter*, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567 (1888). There plaintiffs began a suit against the bank in the United States Circuit Court (now District Court) of Massachusetts by writ of attachment for the amounts owed them. At the time the lawsuit was instituted, the bank was solvent; but it later closed, and a receiver was appointed to wind up its affairs. The question before the Court was whether an attachment could issue against a solvent national bank before final judgment in a suit begun in federal court.

The Court noted that although the prohibition against interlocutory injunctions did not expressly apply to federal courts, those courts were only authorized to issue attachments in common law causes as provided by the applicable state law. The Court held that the power of state courts to issue attachments (and injunctions) prior to final judgment had been eliminated by the federal statute and that the statute was not limited to protecting insolvent banks:

> Although the provision was evidently made to secure equality among the general creditors in the division of the proceeds of the property of an insolvent bank, its operation is by no means confined to cases of actual or contemplated insolvency. The remedy is taken away altogether and cannot be used under any circumstances. 124 U.S. at 727, 8 S.Ct. at 721.

We are of the opinion that the precedential value of the broad language of the last quoted sentence is limited to the facts of the case in which it was spoken, and that the *ratio decidendi* of *Mixter* does not extend to the facts of the case at bar. We reach this conclusion only after a careful search for subsequent decisions of the United States Supreme Court interpreting 12 U.S.C.A. § 91. We are unable to find that the *Mixter* rationale has been applied to the converse situation; that is, a situation in which a debtor of a national bank is seeking, by interlocutory injunction, to protect *his* property from wrongful seizure and foreclosure sale by the bank. *See, Van Reed v. People's National Bank of Lebanon*, 198 U.S. 554, 25 S.Ct. 775, 49 L.Ed. 1161 (1905); *Mechanics Universal Joint Company v. Culhane*, 299 U.S. 51, 57 S.Ct. 81, 81 L.Ed. 33 (1936). Nor have we found any federal court of appeals or district court decisions which make the *Mixter* decision so applicable.

Although we have read with interest the opinions in other states which hold contra to our decision today, *Freeman Mfg. Co. v. National Bank of Boston*, 160 Mass. 398, 35 N.E. 865 (1894); *Metropolitan Lumber Co. v. Fordham Nat. Bank*, 102 N.J.Eq. 514, 141 A. 742 (1928); *First National Bank of Oakland v. Superior Court*, 240 Cal.App.2d 109, 49 Cal.Rptr. 358, *cert. denied* 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65 (1966), we are not persuaded by what appears to be blind reliance on *dicta* in the federal cases. Rather, we look to the purpose of the statute which was to secure the assets of a bank, whether solvent or insolvent, for ratable distribution among its general creditors and to protect national banks in general. *See, e. g., First National Bank v. Colby*, 21 Wall. 609, 22 L.Ed. 687 (1874); *Loew's Inc. v. Superior Court*, 301 P.2d 64 (Cal.App. 1956).

In our opinion, the decision in *Earle v. Pennsylvania, et al.*, 178 U.S. 449, 20 S.Ct. 915, 44 L.Ed. 1146 (1900), undermines the literalism accorded by courts of our sister states to the *Mixter* Court's statement that the remedies of attachment, injunction and execution are taken away altogether and cannot be used under any circumstances. A

writ of attachment by garnishment was issued and served upon the Chestnut Street National Bank, as garnishee, to reach the assets of one James Long; and upon the answer and interrogatories filed by the bank, judgment was entered against the bank. Shortly thereafter the bank closed, and Earle was appointed receiver. He intervened and moved to vacate the judgment and dismiss the attachment upon the authority of the statute under consideration here. In reviewing the decision of the Supreme Court of Pennsylvania sustaining the attachment and judgment against the bank or garnishee, Mr. Justice Harlan, writing for the court said:

"Sections 5234, 5235, and 5236, above quoted, have reference to the affairs and property of national banks in the hands of receivers, and the administration of its assets by the Comptroller; and the words in § 5242, 'no attachment, injunction, or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding in any state, county, or municipal court,' are to be construed in connection with the previous parts of the same section declaring null and void certain transfers, assignments, deposits, and payments made after the commission by the bank 'of an act of insolvency, or in contemplation thereof,' with the intent to prevent the application of the bank's assets in the manner prescribed by Congress, or with a view to the preference by the bank of one creditor to another. Whatever may be the scope of § 5242, an attachment sued out against the bank *as garnishee* is not an attachment against the bank or its property, nor a suit against it, within the meaning of that section. It is an attachment to reach the property or interests held by the bank for others." 178 U.S. at 453, 454, 20 S.Ct. at 917.

■ In the instant case, appellee is not using the statute as a shield to protect its assets, but is using it to preclude appellant from protecting its own property. True, appellee has a security interest of $700,000 in the property. However, the property is in the form of an office building allegedly worth in excess of $1,000,000 which cannot be sold, or assigned, or spirited away in the dark of the night so as to defeat appellee's security interest. The Chancellor predicated the temporary injunction (before it was dissolved) upon the condition that appellant continue to pay interest on the $700,000 at the contract rate until a final determination on the merits could be made. In short, appellee's security interest in appellant's property was completely protected.

Without the issuance of the temporary injunction, however, appellant's property would have been sold without equity of redemption; and its only remedy would be to bring an action against the bank for damages. This type of inadequate and incomplete relief at law prompted the fashioning of equitable relief, which appellee says is not available in this situation.

Appellee seeks to rely on the procedure of public foreclosure sale sanctioned by the laws of this State, but maintains that appellant is unable to avail itself of the statutory protection of T.C.A. §§ 23–2401 *et seq.* We cannot allow appellee to avail itself of the law favorable to it and not be bound by that part which accords relief to appellant, *State v. Superior Court*, 128 Wash. 100, 222 P. 203 (1924).

We have determined that the United States District Courts in this State would have no jurisdiction to entertain this action, *Bachman v. First Mechanics Nat. Bank of Trenton*, 69 F.Supp. 739 (D.C.N.J.1947); *Rooney v. First Wisconsin National Bank*, 332 F.Supp. 108 (D.C.1971), and that our State courts provide the only forum in which appellant may obtain relief.

Reversed and remanded to the Chancery Court of Davidson County for proceedings consistent with this opinion. Costs of this appeal are adjudged against appellee.

COOPER, C. J., and HARBISON, J., concur.

HENRY, J., not participating.

BROCK, J., dissents—see separate opinion.

BROCK, Justice (dissenting).

I respectfully dissent. I do so most reluctantly because the majority opinion has reached a just result. It is my view, however, that the last clause of 12 U.S.C.A., § 91, absolutely forbids the issuance by a state court of a temporary injunction or any similar process against a national bank prior to entry of a final judgment or decree. That clause provides:

". . . ; and no attachment, injunction, or execution, shall be issued against such (national banking) association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

As acknowledged in the majority opinion, the Supreme Court of the United States has construed this provision to apply not only to insolvent national banks but to solvent ones as well. That Court has said that "The remedy is taken away altogether and cannot be used under any circumstances." *Pacific National Bank of Boston v. Mixter*, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567 (1888). The opinion in the *Mixter* case traces the legislative history of § 91 and makes clear that the intent of Congress was to protect all national banks from all pre-judgment injunctions, attachments, etc., issuing from state courts. The distinction made in the majority opinion between state court actions brought by *debtors* of a national bank and those brought by *creditors* of a national bank is, in my opinion, not a valid one because the harm to the national bank defendant is the same whether the injunction is sought by a debtor or by a creditor. See *First National Bank of Oakland v. Superior Court*, 240 Cal.App.2d 109, 49 Cal.Rptr. 358 (1966), cert. den. 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65 (1966); *Miller v. Mercantile National Bank of Hammond*, 234 Ind. 202, 125 N.E.2d 720 (1955); *Kemple v. Security First National Bank of Los Angeles*, 249 Cal.App.2d 719, 57 Cal.Rptr. 838 (1967); *Freeman Mfg. Co. v. National Bank of Republic*, 160 Mass. 398, 35 N.E. 865 (1894). A temporary injunction by a debtor restraining foreclosure of a deed of trust belonging to the bank constitutes interference with the assets of the bank in the same way as does an attachment by a creditor of the same deed of trust. Accordingly, I would hold that the Chancellor was correct.