**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harry LEMAIRE, Estate of Richard Patton, Hilmar R. Zeissig, Bert F. Scales, and Dieter J. Scherfenberg, Defendants-Appellants,**

v.

**MBANK ABILENE, N.A.,**
**Defendant-Appellee.**

**No. 86–1761.**

United States Court of Appeals, Fifth Circuit.

Sept. 9, 1987.

Rehearing and Rehearing En Banc Denied Oct. 9, 1987.

Bruce W. Claycombe, Kenneth L. King, Jones, Claycombe & King, Dallas, Tex., for Lemaire & Patton.

John M. Zukowski, Campbell, Athey & Zukowski, Houston, Tex., for Zeissig, et al.

James M. Spears, Douglas N. Letter, U.S. Dept. of Justice, Washington, D.C., Marvin Collins, U.S. Atty., Ft. Worth, Tex., Barbara C. Biddle, Atty., Appellate Staff, Civ.Div., U.S. Dept. of Justice, Frank C. Bonaventure, Jr., Office of Comptroller of the Currency, Washington, D.C., for U.S.

Joseph D. Cheavens, Houston, Tex., Jeff Joyce, W. Mike Baggett, Dallas, Tex., for MBank.

Before POLITZ, JOHNSON, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

This appeal requires us to define the term "final judgment" as used in 12 U.S.C. § 91, which proscribes "attachment, injunction or execution" against a national bank "before final judgment in any suit" in state court. We agree with the trial court's interpretation and affirm.

### *Background*

The genesis of the present proceeding is a state court suit by Harry Lemaire and the other appellants against MBank Abilene, formerly Abilene National Bank,

alleging breach of contract, fraud, and tortious interference with contract. At the conclusion of an extended trial the jury awarded appellants sixty-nine million dollars.

MBank appealed the adverse judgment to the Texas Court of Appeals, but did not post a supersedeas bond. The trial court first stayed enforcement of the judgment pending exhaustion of all rights of appeal, but then vacated that order. MBank petitioned the Court of Appeals and the Supreme Court of Texas for a writ of mandamus directing the trial court to give effect to 12 U.S.C. § 91 and thereby preclude execution of the judgment pending the appeal. When the state appellate courts declined to consider those petitions, appellants caused writs of garnishment to be served on, *inter alia*, the Federal Reserve Bank in Dallas, which stopped clearance of MBank checks and threatened its insolvency. In response to this development the United States, on behalf of the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency,[1] filed the instant suit in federal district court, invoking 12 U.S.C. § 91 as the basis for a temporary restraining order and preliminary injunction prohibiting appellants from executing on the state court judgment during the pendency of the state court appeal. The district court granted the requested relief and this appeal followed.

1. The interest of the United States stems from the fact that the FDIC holds a fifty-million-dollar certificate of deposit on MBank Abilene and is liable for over one hundred sixty-eight million dollars of insured MBank deposits. Further, the Comptroller of the Currency exercises extensive control over all activities, including dissolution, of national banks under the National Bank Act, 12 U.S.C. § 38 (codified as detailed in the "References in text" thereto).

2. The Anti-Injunction Act, 28 U.S.C. § 2283, prohibiting a federal court from enjoining state court proceedings, is not applicable. The Act does not prevent the United States, or one of its agencies, from acting to protect a federal interest. *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971). Moreover, the Act does not apply to injunctions "expressly authorized by Congress," including injunctions neces-

*Analysis*

As noted, the sole issue posited by this appeal is the meaning of the term final judgment in 12 U.S.C. § 91, which prescribes in pertinent part that

no attachment, injunction, or execution, shall be issued against such [national banking] association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court.

Appellants insist that the garnishment they caused to issue was not inconsistent with this congressional mandate because the state trial court had entered a final judgment. The district court was not persuaded and concluded that final judgment within the intendment of 12 U.S.C. § 91 means a judgment from which no appeal can be taken. The district court found that the garnishment violated 12 U.S.C. § 91 and enjoined any action by appellants to enforce the state court judgment pending its review on appeal.[2]

The issue faced by the district court, and now by this court, is *res nova*. Although the Supreme Court has reviewed the text of 12 U.S.C. § 91 on four occasions,[3] it has not considered the final judgment inquiry now presented. Nor has any federal appellate court.[4]

It is axiomatic that the meaning of final judgment varies according to context. Ap-

sary to protect a right created by Congress. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

3. *See Pacific National Bank v. Mixter*, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567 (1888); *Earle v. Pennsylvania*, 178 U.S. 449, 20 S.Ct. 915, 44 L.Ed. 1146 (1900); *Van Reed v. People's National Bank*, 198 U.S. 554, 25 S.Ct. 775, 49 L.Ed. 1161 (1905); and *Third National Bank v. Impac Limited, Inc.*, 432 U.S. 312, 97 S.Ct. 2307, 53 L.Ed.2d 368 (1977).

4. We find only one state appellate decision, *Loews' Incorporated v. Superior Court of the State of California*, 301 P.2d 64 (Cal.Ct.App. 1956), which defined final judgment as a judgment "from which no appeal can be taken." *Id.* at 72. The opinion was later withdrawn from official publication by the California Supreme Court. No reason was given for this withdrawal.

pellants urge that we simply accord the meaning ascribed when appealability itself is at issue, namely a judgment on the merits by the trial court. *See* 28 U.S.C. § 1291; Fed.R.Civ.P. 54(b). To do so would be overly facile and would oblige us to ignore those instances wherein the term has been recognized as meaning a judgment after all appeals have been exhausted. That is the definition given to it by this court and our colleagues in the Seventh Circuit in construing the Equal Access to Justice Act, 28 U.S.C. § 2412(d). *Russell v. National Mediation Board,* 764 F.2d 341 (5th Cir. 1985), *withdrawn on other grounds,* 775 F.2d 1284 (1985); *McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983). The same definition has been accorded in the Suits in Admiralty Act, 46 U.S.C. §§ 741, 748, and the Clayton Act, 15 U.S.C. § 16(a); *see McDonald; Illinois v. Sperry Rand Corp.,* 237 F.Supp. 520 (N.D.Ill.1965).

In 1883, not long after the language we consider today was added to our statutory treasury,[5] final judgment in a statute governing the execution of judgments against a revenue officer was taken to mean a judgment after affirmance on appeal. 28 U.S.C. § 2006 (Act Mar. 3, 1863, c. 76, § 12, 12 Stat. 741 (later R.S. 989)); *Schell v. Cochran,* 107 U.S. (17 Otto) 625, 27 L.Ed. 543 (1883). Finally, we observe that in at least one instance not requiring statutory interpretation, the Supreme Court has given the term the judgment-after-appeal connotation. *Bradley v. Richmond School Board,* 416 U.S. 696, 711 n. 14, 94 S.Ct. 2006, 2016 n. 14, 40 L.Ed.2d 476 (1974) (discussing collateral attack of a final judgment for purposes of retroactive application of a statute).

Appellants urge us to adopt what it advances as the Texas definition of final judgment: a judgment on the merits by the trial court.[6] We decline their invitation, for although a Texas state court judgment is involved it is a federal statute that we interpret. We are convinced that Congress intended that a federal definition of final judgment be applied to the terms and conditions of the National Bank Act. We are buttressed in this conclusion by a recent decision of the Supreme Court implicitly holding that a federal definition is to be given to words used in the National Bank Act. *Clarke v. Securities Industry Ass'n,* —— U.S. ——, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) ("branch," 12 U.S.C. §§ 36, 81). We have explicitly so held. *Department of Banking v. Clarke,* 809 F.2d 266 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987) ("state bank," 12 U.S.C. § 36). *Cf. Interfirst Bank Abilene v. FDIC,* 777 F.2d 1092 (5th Cir.1985) (allowance of claims against insolvent national bank is a matter of federal law).

We draw our final guidance from an analysis of the purpose of the statutory language now found in the last portion of 12 U.S.C. § 91. Although the legislative history is scant, the discussion in the Supreme Court decisions involving the statute is instructive.

The National Currency Act, now the National Bank Act, was enacted in 1864 to provide for the formation and regulation of national banks. The prohibition which is the critical language before us today was added in 1873, a year of financial panic and widespread bank closings. That language was added to the section of the National Bank Act relating to preferential transfers and to acts in contemplation of involvency.[7]

---

**5.** Revised Statutes of 1873–74, Title LXII, Ch. 4 § 5242, Act Mar. 3, 1873, c. 269, § 2, 17 Stat. 603.

**6.** *But see Renger v. Jeffrey,* 143 Tex. 73, 182 S.W.2d 701, 702 (1944) (distinguishing "final judgment" from "judgment before it comes final and while an appeal is pending" for purposes of Texas Rules of Civil Procedure 364, 368, and 385).

**7.** 12 U.S.C. § 91 in its entirety reads:
All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any

national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments of decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter; or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly

In its first discussion of the subject legislation in *Pacific National Bank v. Mixter*, 124 U.S. 721, 726, 8 S.Ct. 718, 720, 31 L.Ed. 567 (1888), the Supreme Court opined that what is now 12 U.S.C. § 91 "was intended as an aid to the enforcement of the principle of equality among the creditors of an insolvent bank." The court later added that the provision sought to "prevent such banks from creating preferences in contemplation of their failure." *Mechanics Universal Joint Co. v. Culhane*, 299 U.S. 51, 55, 57 S.Ct. 81, 83, 81 L.Ed. 33 (1936).

Our reading of the statute, and the early discussions of it by the Supreme Court, lead us to conclude that the provision was added to the preferential transfer section of the National Bank Act to prevent creditors from obtaining preferential treatment by court action, including the securing of a judgment at the trial court level.

The decision in *Earle v. Pennsylvania*, 178 U.S. 449, 20 S.Ct. 915, 44 L.Ed. 1146 (1900), adds little to our quest for it dealt only with an attachment against the bank as holder of a thing of value for another. But in its next encounter, *Van Reed v. People's National Bank*, 198 U.S. 554, 557, 25 S.Ct. 775, 776, 49 L.Ed. 1161 (1904), the Court recognized that:

> National banks are quasi-public institutions, and for the purpose for which they are instituted are national in their character ... and are not to be interfered with by state legislative or judicial action, except so far as the law-making power of the Government may permit.

Finally, in its most recent consideration of § 91, the Court footnoted and quoted with approval from an early decision by the Supreme Court of Georgia to the effect that the policy behind the legislation was to prevent preference or priority of claims against national banks by seizure under state authority before final adjudication of claims, and to protect the banks from the crippling effects of such seizures. *Third National Bank v. Impac Limited, Inc.*, 432 U.S. 312, 322 n. 13, 97 S.Ct. 2307, 2313 n. 13, 53 L.Ed.2d 368 (1977) (*quoting Planters Loan & Sav. Bank v. Berry*, 91 Ga. 264, 265, 18 S.E. 137 (1893)).

Congress has entrusted the superintendence of national banks to the Comptroller of the Currency, 12 U.S.C. § 1 *et seq.* Amongst the Comptroller's duties is the obligation to assure the continued viability of national banks where possible, and the orderly and fair liquidation of any national bank which falls into insolvency. The Comptroller is to protect the interests of the United States, direct and indirect, general and specific, and is to secure an equitable distribution of bank assets to the creditors of a failed bank.

Quick and vigorous action to prevent the premature, and potentially fatal, seizure of assets of an operational bank, an eye cautiously cocked to the financial interest of the government as a creditor of any "embarrassed" institution and as guarantor of its depositors, and the securing of substantial assets essential to a fair and equitable dispersal to creditors of a failed bank, are all important functions of the Comptroller. All are in the national interest as addressed by the Congress. We are persuaded that Congress intended to and did arm the Comptroller with the lorica of an absolute proscription against the seizure of the property of a national bank before a judgment against that institution had completed the appellate process.

For the foregoing reasons, we conclude and hold that the term "final judgment" as used in 12 U.S.C. § 91 means a judgment on the merits which is no longer subject to examination on appeal, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review.

The judgment of the district court is AFFIRMED.

---

null and void; and no attachment, injunction, or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court.