MILLER, D/B/A MIDWEST SUPPLY CO. *v.* MERCANTILE
NATIONAL BANK OF HAMMOND, ETC. ET AL.

[No. 29,244.   Filed April 6, 1955.]

Owen W. Crumpacker, Theodore M. Gemberling, Lowell E. Enslen and Crumpacker & Shroer, all of Hammond, for appellant.

Galvin, Galvin & Leeney, of Hammond, for appellee Mercantile National Bank of Hammond.

Straley Thorpe and James J. Richard, of Hammond, for intervener-appellee Ortman-Miller Machine Company, Inc.

ACHOR, J.—Appellant filed an unverified complaint for damages against appellee Mercantile National Bank of Hammond, a national banking association, in three paragraphs for (1) breach of contract, (2) slander of business reputation and (3) for conversion of his bank account. Among other things, the complaint recited the fact of extended litigation in the Jasper Cir-

cuit Court at Rensselaer, Indiana, between appellant and intervener-appellee Ortman-Miller Machine Company, Inc., with regard to the true ownership of the bank account here in controversy. Thereafter appellant filed a verified petition for temporary injunction, *pendente lite,* to prevent the appellee bank "from in any way disposing of . . . the balance on hand (in the name of appellant) . . ." and "from filing an interpleader in the action at Rensselaer, of taking any other such steps with a view toward limiting its liability in this action or depriving the court of jurisdiction to render a full and complete judgment on final hearing."

Appellee Mercantile National Bank filed a demurrer to appellant's petition for a restraining order *pendente lite* and for grounds of demurrer asserted:

> "1. That the court has no jurisdiction of the subject-matter of plaintiff's petition.
> "2. That plaintiff's petition does not state facts sufficient to entitle plaintiff to injunctive relief against this defendant."

The cause was submitted on the demurrer and arguments were heard. The court sustained the demurrer. The appellant refused to plead further and the court thereupon denied appellant's petition for temporary injunction *pendente lite.* From the ruling appellant prosecutes this appeal.

The first question presented is: Was demurrer a proper device for testing the legal sufficiency of a petition for temporary injunction *pendente lite?* Appellant contends that a demurrer is a statutory procedural device for enabling a defendant to test the legal sufficiency of a *complaint* (Sec. 2-1007, Burns' 1946 Repl.) (Acts 1911, ch. 157, sec. 2, p. 415) or an *answer* (sec. 2-1014, Burns' 1946 Repl.) (Acts 1881 (Spec. Sess.), ch. 38, sec. 100, p. 240), and that the device is not available

of testing the sufficiency of a petition for temporary injunction. Attention is called to the fact that if a demurrer to a complaint is sustained for any of the six statutory grounds, the plaintiff may plead over as of right or amend. Whereas, on the other hand, the proceedings to obtain a temporary injunction *pendente lite* are summary in nature and contemplate a speedy hearing on notice without resort to the delays of formal pleadings (Secs. 3-2104, 3-2105, Burns' 1946 Repl.). Also, appellant contends that the granting of a temporary injunction does not rest solely upon the allegations of the "petition" but upon a "full consideration by the court of the petition, the affidavits filed in support of the petition," and the evidence adduced at the hearing, that such proceedings are not contemplated, with respect to a demurrer to a complaint or answer.

Although appellant describes his pleading as a "verified petition," it carries with it all the necessary allegations of the complaint (Secs. 3-2103, 3-2104) ; and although the proceedings are summary in nature, and contemplate a speedy hearing, it is also true that the right to grant an ancillary writ is inherent in the court and rests upon the discretion of the court. We see no logical reason why the propriety of the relief sought cannot be presented to the court by demurrer rather than upon affidavit (Sec. 3-2105, *supra*), and/or by admission of evidence—if the parties elect so to do, as they did in this case.

The second question presented is: Did the trial court have jurisdiction over the subject-matter of appellant's "petition" for temporary injunction? Title 12, Sec. 91 U. S. C. A., R. S. 5242, provides in part as follows:

"All transfers of the notes, bonds, bills of exchange, or other evidence of debt owing to any national banking association, or of deposits to its

credit; . . . and no attachment, injunction, or execution, shall be issued against such association or its property, before final judgment in any suit, action or proceedings, in any state, county, or municipal court."

That the statute applies to national banks generally was decided in the case of *Pacific National Bank* v. *Mixter* (1888), 124 U. S. 721, 724, 726, 727, 728, 8 S. Ct. 718, 719, 720, 721, 31 L. Ed. 567, in which the Supreme Court said:

> "In the view we take of the case, the most important question to be considered is whether an attachment can issue against a national bank before judgment in a suit begun in the Circuit Court of the United States. . . .
>
> ". . . It is clear to our minds that, as it stood originally as part of Sec. 57 after 1873, and as it stands now in the Revised Statutes, it operates as a prohibition upon all attachments against national banks under the authority of the state courts. That was evidently its purpose when first enacted, for then it was part of a section which, while providing for suits in the courts of the United States or of the State, as the plaintiff might elect, declared in express terms that if the suit was begun in a state court no attachment should issue until after judgment. The form of its re-enactment in the Revised Statutes does not change its meaning in this particular. It stands now, as it did originally, as the paramount law of the land that attachments shall not issue from state courts against national banks, and writes into all state attachment laws an exception in favor of national banks. Since the act of 1873 all the attachment laws of the State must be read as if they contained a provision in express terms that they were not to apply to suits against a national bank.
>
> "The prohibition does not in express terms refer to attachments in suits begun in the Circuit Courts of the United States, but as by Sec. 915 of the Revised Statutes those courts are not authorized to issue attachments in common law causes against

the property of a defendant, except as 'provided by the laws of the State in which such court is held for the courts thereof,' it follows that, as by the amendatory act of 1873, now part of Sec. 5242 of the Revised Statutes, *all power of issuing attachments against national banks before judgment has been eliminated from state statutes, there cannot be any laws of the State providing for such a remedy on which the Circuit Courts may act.* The law in this respect stands precisely as it would if there were no state law providing for such a remedy in any case. . . . In our opinion the effect of the act of Congress is to deny the state remedy altogether so far as suits against national banks are concerned, and in this way it operates as well on the courts of the United States as on those of the States. Although the provision was evidently made to secure equality among the general creditors in the division of the proceeds of the property of an insolvent bank, its operation is by no means confined to cases of actual or contemplated insolvency. The remedy is taken away altogether and cannot be used under any circumstances.

"It was further said that *if the power of issuing attachments has been taken away from the state courts, so also is the power of issuing injunctions. That is true.*

"We are, therefore, of opinion that the attachments in all suits were illegal and void, because issued without any authority of law. . . ." (Our italics.)

The decision in the *Mixter* case, *supra,* was subsequently approved in the case of *Van Reed* v. *People's National Bank* (1905), 198 U. S. 554, 558, 25 S. Ct. 775, 49 L. Ed. 1161. In the latter case the court said:

"The language of the latter clause of this section (referring to Title 12, Sec. 91, U. S. C. A.) would seem to be too plain to admit of discussion as to its meaning. It in terms forbids the issuing of an attachment, injunction, or execution against a national bank or its property before final judgment in any suit, action, or proceeding in any state, county, or municipal court.

This was the view taken by this court in *Bank* v. *Mixter, supra.* . . ."

The court then cites from that case, and continues as follows:

"Since the rendition of that decision it has been generally followed as an authoritative construction of the statute holding that no attachment can issue from a state court before judgment against a national bank or its property."

The United States Supreme Court is the final authority on the interpretations of acts of Congress.

Our attention has been called to certain cases where temporary injunctions have been issued to a defendant in a fiduciary relationship such as a receiver, trustee or spouse, and also to a national bank with whom the fiduciary has deposited monies belonging to the fiduciary or spouse. In these cases the process did not interfere with the banking functions of other depositors or of the bank as a federal instrumentality. We are not confronted with that situation here and express no opinion as to those cases. Here we are confronted with a direct action against the bank and we consider the *Mixter* case, *supra,* and the *Van Reed* case, *supra,* as controlling.

The third and final question is: Did appellant's verified "petition" and complaint state facts sufficient to entitle him to the injunctive relief asked? The complaint and petition show that the appellant has a deposit in the appellee bank which the appellee refused to pay him upon his demand. The deposit is not *specific property* which could be reached by attachment, nor is it the subject of an action for conversion. That action is, therefore, in debt. The appellant refers to an action pending in Jasper Circuit Court and states that the appellee has threatened on an inter-

pleader to pay the amount of the deposit to the Clerk of Jasper Circuit Court. However, appellant presents no facts to show that payment into the Jasper Circuit Court of the amount in controversy or any other disposition of said sum would in any way interfere with his recovery of any judgment he might obtain as a result of the primary action in the court below.

In the case of *Koss* v. *Continental Oil Co.* (1944), 222 Ind. 224, 230, 231, 52 N. E. 2d 614, this court said:

> "Nor will courts grant such equitable relief unless there is a showing that the failure to grant such relief will result in irreparable harm to the party seeking the relief and that the party has no adequate legal remedy. In the instant case the appellant has failed to show the alleged irreparable harm, the shutting off of her supply of gasoline. If damages should result to her from any breach of her contract by the Oil Company she has an adequate legal remedy by an action for damages of her contract."

If the appellee is indebted to appellant for money which it wrongfully withholds, he has an adequate remedy at law. The order of the trial court in denying a temporary injunction *pendente lite* is therefore sustained.

NOTE.—Reported in 125 N. E. 2d 720.