**GENERAL ELECTRIC CREDIT COR-PORATION, Plaintiff,**

v.

**JAMES TALCOTT, INC., and Franklin National Bank, Defendants.**

No. 64 Civ. 3680.

United States District Court
S. D. New York.

Feb. 23, 1966.

700

Bernstein, Seawell & Kaplan, New York City, for plaintiff.

Hahan, Hessen, Margolis & Ryan, New York City, for defendant James Talcott, Inc.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Franklin Nat. Bank.

## OPINION

TENNEY, District Judge.

Plaintiff General Electric Credit Corporation (hereinafter sometimes referred to as "Credit") has filed a complaint against defendants James Talcott, Inc. (hereinafter sometimes referred to as "Talcott") and the Franklin National Bank (hereinafter sometimes referred to as the "Bank") for alleged violations of Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2) and Section 18(a) of the Exchange Act, 15 U.S.C. § 78r(a).[1]

Credit alleges that Talcott and the Bank controlled certain corporations and that Talcott and the Bank knowingly made misrepresentations in reports filed with the Securities and Exchange Commission and by other means concerning the financial condition of said controlled corporations and failed to disclose that these corporations were insolvent. It is further alleged that relying upon these representations, plaintiff Credit purchased certain securities of the controlled corporation and now seeks damages allegedly sustained as a result of the said misrepresentations of defendant Talcott and the Bank.

The Bank moves herein, pursuant to Rule 12(b) (3) of the Federal Rules of Civil Procedure, to sever and dismiss the action against it on the ground that, as a national bank organized under the National Bank Act, it may be sued only in the judicial district in which it was established, as provided in Section 94 of Title 12 of the United States Code. The Bank alleges that its charter recites its establishment in the Eastern District of New York, and, therefore, that venue in this Court is improper. The Bank maintains its executive offices and three branch offices in the Southern District and the offers and sales in this action allegedly took place in this district. Plaintiff Credit and defendant Talcott both have their principal offices in the Southern District.

Plaintiff opposes the instant motion on the ground that the venue provisions of the Securities Acts, Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, are controlling in actions brought under these Acts. Subsequent to oral argument the Securities and Exchange Commission (hereinafter referred to as "Commission") and the United States of America, on behalf of the Comptroller of the Currency (hereinafter referred to as "Comptroller"), filed briefs as *amici curiae* with permission of the Court and limited solely to the question of venue. The Commission and the Comptroller take contrary positions— the former contending that the venue provisions of the Securities Acts should control and the motion be denied, and the latter contending that the venue provisions of the National Bank Act are controlling and that the motion should be granted. It does not appear that there are any cases involving a direct conflict between the venue provision of the National Bank Act and that of another special federal venue statute. Accordingly, this case is one of first impression.[2]

---

1. "[E]xcept for jurisdiction by way of diversity of citizenship, actions by or against national banks may be brought in the federal courts only where an essential element of the cause of action presents a substantial federal question." Austin v. Altman, 332 F.2d 273, 276 (2d Cir. 1964).

2. Two recent decisions of the United States Supreme Court, while affirming the continued vitality of Section 94 of Title 12, are not determinative of the issue presented herein. In Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), a receiver for a Texas insurance company in liquidation under state law sued multiple defendants, including two national banks (located in Dallas County, Texas) for conspiracy to defraud, suit being brought in accordance with the venue provisions of the Texas Insurance Code in the state court for the district (Travis County, Texas), in which the receiver had been appointed. Nonetheless, the Supreme Court brushed aside the

The statutes involved read as follows:

Section 94 of Title 12 of the United States Code, the pertinent provision of the Bank Act, provides:

Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

Section 77v(a) of Title 15 of the United States Code, the pertinent provision of the Securities Act, provides:

The district courts of the United States, and the United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by ·this subchapter.

Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States. No costs shall be assessed for or against the Commission in any proceeding under the subchapter brought by or against it in the Supreme Court or such other courts.

Section 78aa of Title 15, the pertinent provision of the Exchange Act, provides:

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations

---

receiver's argument that application of Section 94 would prevent a litigant from joining two national banks in the same action "if they are located in different counties or *in the federal courts if they are located in different districts*" (id. pg. 563, 83 S.Ct. at pg. 525, emphasis added) as "not being presented by these cases" (ibid.), and in any event a matter for congressional consideration, and held Section 94 to be mandatory. The Court further held that Section 1348 of Title 28 of the Code and its predecessors (Act of July 12, 1882, c. 290, 22 Stat. 162; Act of March 3, 1887, c. 373 as amended by the Act of Aug. 13, 1888, c. 866, 25 Stat. 436; see 371 U.S. at 570–571, 83 S.Ct. 520) did not relax the venue provisions of Section 94, but dealt with no more than matters of federal jurisdiction and "sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited" (id. at 566, 83 S.Ct. at 526). Michigan Nat'l Bank v. Robertson, 372 U.S. 591, 83 S. Ct. 914, 9 L.Ed.2d 961 (1963) (Per curiam), involved a state suit brought in Nebraska against a national bank located

in Michigan, alleging violations of the Nebraska Installment Loan Act and applying the local venue statute. The case differs from *Langdeau* only in that the question was raised as to whether the action was a local rather than a transitory action (and as such an exception to Section 94 under Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880); whether there had been a waiver by the bank of the provisions of Section 94; and in that the action involved venue as between two states rather than counties within the same state with resultant inconvenience to plaintiffs who were compelled to travel many miles to vindicate their rights (see concurring opinion, per Mr. Justice Black, 372 U.S. at 595, 83 S.Ct. 914). Both cases involve the supremacy of a federal statute vis-à-vis a state statute. In neither case, except as noted, was the question presented whether Section 94 had been repealed in whole or in part by another federal statute. Accordingly, *Langdeau* and *Robertson* do no more, in the posture of the present case, than reaffirm the continued vitality of Section 94 insofar as state court venue may be concerned.

of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts.

■ It would appear settled, at least insofar as the *nisi prius* court is concerned that a national bank is "established", within the meaning of Section 94 of Title 12, only in the federal district encompassing the location specified in its charter [3]—Leonardi v. Chase Nat. Bank, 81 F.2d 19, 22 (2d Cir.), cert. denied, 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398 (1936) (as between the Eastern and Southern Districts of New York); Buffum v. Chase Nat. Bank, 192 F.2d 58 (7th Cir. 1951), cert. denied, 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952) (as between the Southern District of New York and the Northern District of Illinois); International Refugee Org. v. Bank of America Nat. Trust & Sav. Ass'n, 86 F.Supp. 884, 886 (S.D.N.Y. 1949) (as between the North District of California [Southern Division], and the Southern District of New York.) Nor does that fact that the national bank has branches in another district affect this rule.[4] Accordingly, unless Congress has, by subsequent legislation, enlarged or altered the restrictive provisions of Section 94, defendant Franklin's position is well taken.

In the first place, it should be noted that Section 94 has been held not to have been superseded by the general venue statute, Section 1391 of Title 28 of the

---

3. In the instant case, Franklin has, with approval of the Comptroller of the Currency (see 12 U.S.C. § 30 (Supp.1965)), changed both its original name and location (see Exhibit A, Oliensis affidavit in support of the motion), but has always been and remains located in the Eastern District of New York.

4. It would appear to be illegal and *ultra vires* for a national banking association to have any branch offices (except foreign branches) in any state of the Union other than that in which it is incorporated. International Refugee Org. v. Bank of America Nat. Trust & Sav. Ass'n, 86 F.Supp. 884, 885–886 (S.D. N.Y.1949); 12 U.S.C. §§ 81, 36. It would also appear that, prior to the amendment of February 25, 1927 (the McFadden Act, C. 191 § 7, 44 Stat. 1228), no power to establish branches was granted under the National Bank Act, except that state banks with existing branches were permitted to retain these branches on becoming national banking associations. See First Nat'l Bank v. State of Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 (1924); State of South Dakota v. Nat'l Bank of South Dakota, 219 F.Supp. 842 (D.S.D. 1963), aff'd, 335 F.2d 444 (8th Cir. 1964), cert. denied, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965). However, any argument that national banks are "established" at the location of their branches as well as at the locality specified in their charters would appear to have been negated by Leonardi v. Chase Nat. Bank, 81 F.2d 19 (2d Cir.), cert. denied, 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398 (1936). The further argument that Congress did not intend to prohibit suit in the district where the branch bank was located, since such branches were not authorized when the predecessor statutes to 12 U.S.C. § 94 were passed, is fully answered by the failure of Congress, in the years since such branches were authorized to amend the venue provisions of the National Bank Act to enlarge them accordingly.

United States Code. Buffum v. Chase Nat. Bank (supra, 192 F.2d at 61); International Refugee Org. v. Bank of America Nat. Trust & Sav. Ass'n (supra, 86 F.Supp. at 886). However, Section 1391 is clearly a general venue statute whereas the venue provision of the National Bank Act (12 U.S.C. § 94) is, at least in one respect, a special venue statute since it deals only with corporations of a particular class, i. e., national banks.[5]

■ Accordingly, the question presented is whether the special venue provisions of the Securities and Exchange Acts (see SEC v. Briggs, 234 F.Supp. 618 (N.D.Ohio 1964); SEC v. Wimer, 75 F.Supp. 955 (W.D.Pa.1948)) expand and accordingly repeal in part the venue provisions of the National Bank Act. As stated in SEC v. Wimer (supra 75 F. Supp. at 961)—"Special Venue Statutes are those statutes which Congress has legislated with reference to a particular kind of action, and has decreed that certain actions might be brought in forums, *in some of which the action could not be brought, but for such legislation.*" (Emphasis added.)[6] Thus it was held in the

last two cases cited above that the special venue provisions of the Securities and Exchange Acts are not limited by the general venue statute or by the doctrine of *"forum non conveniens."*

■ It cannot be seriously disputed that plaintiff and the Commission are arguing for a repeal by implication of Section 94. Although not so worded, Section 94, by judicial construction over the years, forbids suit in any district other than where the national bank is "established". Plaintiff would place such venue "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein," (Section 77v(a)) or "in the district wherein any act or transaction constituting the violation occurred." (Section 78aa)

In determining whether there has been a repeal by implication, the Court is guided by certain rules of long standing.

■ (1) "It is a cardinal principle of construction that repeals by implication are not favored" (United States v. Borden Co., 308 U.S. 188, 198, 60 S. Ct. 182, 188, 84 L.Ed. 181 (1939)),[7]

---

5. The special patent venue provisions of Section 1400(b) of Title 28 of the United States Code have been held to be exclusive of, and not enlarged by, the general venue provisions of Section 1391 (c) of Title 28. Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). Similarly, it has been held in the Third Circuit that Section 1391(c) is not applicable to suits under the Jones Act. Leith v. Oil Transp. Co., 321 F.2d 591 (3rd Cir. 1963); contra, Pure Oil Co. v. Suarez, 346 F.2d 890 (5th Cir. 1965), cert. granted, 382 U.S. 972, 86 S.Ct. 549, 15 L.Ed.2d 464; accord, Fanning v. United Fruit Co., (4th Cir. 1/4/66). For other cases holding that provisions of special venue statutes are not supplemented by the general venue section, see United Transit Co. v. United States, 158 F.Supp. 856 (M.D.Tenn.1957) (civil actions against the United States); Zonolite Co. v. United States, 209 F.Supp. 597 (W.D.Pa.1962) (suits to set aside or enforce Interstate Commerce Commission orders).

6. It should, of course, be pointed out that a general venue statute may extend pre-existing venue. Furthermore, as will be pointed out herein, a special venue statute may be general in its application and a general venue statute may have limited application.

7. "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. [Citing cases.] The intention of the legislature to repeal 'must be clear and manifest' [citing cases]. It is not sufficient * * * 'to establish that subsequent laws cover some or even all of the cases provided for by [the prior act]; for they may be merely affirmative, or cumulative, or auxiliary.' There must be 'a positive repugnancy between the provisions of the new law, and those of the old; and even then the old law is repealed by implication only, *pro tanto*, to the extent of the repugnancy.'" United States v. Borden Co., 308 U.S. 188, 198–199, 60 S.Ct. 182, 188 (1939).

and "the intention of the legislature to repeal must be clear and manifest." Town of Red Rock v. Henry, 106 U.S. 596, 602, 1 S.Ct. 434, 439, 27 L.Ed. 251 (1882). There can be no such repeal unless the implication is "irresistible". Ex parte United States, 226 U.S. 420, 424, 33 S.Ct. 170, 57 L.Ed. 281 (1913); or unless the allegedly repealing statute is "so clearly repugnant as to imply a negative." Beals v. Hale, 45 U.S. (4 Howard) 37, 53, 11 L.Ed. 865 (1846).

■ (2) As stated in Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936):

" * * * There are two well-settled categories of repeals by implication—(1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. *But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment."* (Emphasis added.)

■ (3) It is the "duty" of the Court "to give effect to both the old and new statute, if that can be done consistently with the words employed by congress in each." United States v. Healey, 160 U.S. 136, 146, 16 S.Ct. 247, 251, 40 L.Ed. 369 (1895). A law is not to be construed as impliedly repealing a prior law "unless no other reasonable construction can be applied." United States v. Jackson, 302 U.S. 628, 631, 58 S.Ct. 390, 392, 82 L.Ed. 488 (1938). To find a repeal, it must be "impossible" for both provisions under consideration to stand. Wilmot v. Mudge, 103 U.S. 217, 221, 26 L.Ed. 536 (1880). Repeals by implication "are *never* admitted where the former can stand with the new act."

Chew Heong v. United States, 112 U.S. 536, 549, 5 S.Ct. 255, 260, 28 L.Ed. 770 (1884) (emphasis added). "If, by any reasonable construction, the two statutes can stand together, they must so stand." State of South Carolina v. Stoll, 84 U.S. (17 Wall.) 425, 431, 21 L.Ed. 650 (1873). *"Repeal is to be regarded as implied only if necessary to make the Securities Exchange Act work and even then only to the minimum extent necessary.* This is the guiding principle to reconciliation of the two statutory schemes." Silver v. New York Stock Exch., 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963) (emphasis added).

■ (4) The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage. See, e. g., Kepner v. United States, 195 U.S. 100, 125, 24 S.Ct. 797, 49 L.Ed. 114 (1904); Rodgers v. United States, 185 U.S. 83, 87–88, 22 S.Ct. 582, 46 L.Ed. 816 (1902); Townsend v. Little, 109 U.S. 504, 512, 3 S.Ct. 357, 27 L.Ed. 1012 (1883). Accordingly, legislation directed at a particular class takes priority over the general provisions of other, subsequently enacted statutes. This principle has been clearly recognized by the Court of Appeals for this circuit.

In Commissioner of Internal Revenue v. Rivera's Estate, 214 F.2d 60 (2d Cir. 1954), the Commissioner of Internal Revenue sought to apply the estate tax provisions of the 1934 Revenue Act to United States assets of a Puerto Rico resident who was also a citizen of the United States. The Second Circuit rejected this assertion reasoning, *inter alia,* that Congress, in enacting the Organic Acts for Puerto Rico in 1900 and 1917, had established "that in general the Puerto Ricans should have the duty of supporting their own government and the correlative right of having all of their sources of revenue available for insular expenses." (Id. at 62.) Relying on, *inter alia,* Rodgers v. United States, 185 U.S. 83, 22 S.Ct. 582 (1902), supra, the Court

held that the provisions of the Revenue Act dealing with revenues generally could not be interpreted as impliedly repealing provisions of the earlier Organic Acts which were specifically concerned with the tax status of Puerto Rican residents.

In Washington v. Miller, 235 U.S. 422, 35 S.Ct. 119, 59 L.Ed. 295 (1914), an earlier statute making specific provision for descent and distribution among citizens of the Creek Nation and their Creek descendants was held not to have been repealed by a subsequent statute covering descent and distribution generally applicable to " 'all persons and estates in said Territory, whether Indian, freedmen, or otherwise * * *.' " (Id. at 427, 35 S.Ct. at 122.) There being no repealing clause, and since "it was plainly a general statute [dealing with descent and distribution], and did not show that the attention of Congress was then particularly directed to the descent of the lands of the Creeks" (id. at 428, 35 S.Ct. at 122), the Court held that there had been no implied repeal.

"In these circumstances we think there was no implied repeal, and for these reasons: First, such repeals are not favored, and usually occur only where there is such an irreconcilable conflict between an earlier and a later statute that effect reasonably cannot be given to both (United States v. Healey, 160 U.S. 136, 146, 16 S.Ct. 247, 40 L.Ed. 369, 373; United States v. Greathouse, 166 U.S. 601, 605, 17 S.Ct. 701, 41 L.Ed. 1130, 1131); second, where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general (Townsend v. Little , 109 U.S. 504, 512, 3 S.Ct. 357, 27 L.Ed. 1012, 1015; Ex parte Crow Dog, 109 U.S. 556, 570, 3 S.Ct. 396, 27 L.Ed. 1030, 1035; Rodgers v. United States, 185 U.S. 83, 87–89, 22 S.Ct. 582); and, third, there was in this instance no irreconcilable conflict or absolute incompatibility, for both statutes could be given reasonable operation if the presumption just named were recognized." Washington v. Miller, supra, 235 U.S. at 428, 35 S.Ct. at 122.

These rules are equally applicable to statutes relating to jurisdiction or venue. Rosencrans v. United States, 165 U.S. 257, 262, 17 S.Ct. 302, 41 L.Ed. 708 (1897).

▇▇▇▇▇ Within the framework of the foregoing guiding canons of construction, can it be said that the venue provisions of the Securities and Exchange Acts have repealed the venue provisions of the National Bank Act? I believe that the answer must be that they have not. It has been determined that the provisions of Section 94 apply to all actions against national banks, Leonardi v. Chase Nat. Bank (supra, 81 F.2d at 21); Buffum v. Chase Nat. Bank (supra, 192 F.2d at 61), so that, absent the venue provisions of those statutes (Securities and Exchange Acts), the former statute, unaffected by the general venue statute, would apply to any action brought under the Securities and Exchange Acts. Clearly, there has been no express repeal of Section 94, nor does any party hereto so argue. Indeed, as pointed out by the Supreme Court, "[t]he Securities Exchange Act contains *no express exemption* from the antitrust laws or, for that matter, *from any other statute.*" (Silver v. New York Stock Exch., supra, 373 U.S. at 357, 83 S.Ct. at 1257 (emphasis added)).

Neither the briefs of counsel nor independent research by the Court has uncovered evidence that the venue provisions of the Securities and Exchange Acts were intended to supplant the special venue provisions of the National Bank Act—the intention of the Legislature to repeal is not only not clear and manifest, it is non-existent so far as the evidence is concerned.[8] Furthermore, to the ex-

---

8. Cases cited by the Commission, such as Elof Hansson, Inc. v. United States, 178 F.Supp. 922, 926 (Cust.Ct.1959), rev'd on other grounds, 296 F.2d 779 (C.C.P.A. 1960), cert. denied, 368 U.S. 899, 82 S.Ct. 179, 7 L.Ed.2d 95 (1961) and Marcello

tent that conflict exists between the statutes in question, it cannot be said that Congress cannot have intended to preserve in the Securities and Exchange Acts the exemption granted in the National Bank Act. That Congress was aware of the special status [9] of national banks is clearly evident in the Securities and Exchange Acts themselves. It is significant that the Securities Acts, in the sole instances where they refer to national banks, create exemptions for them from the particular provisions of the Acts; see, e. g., 15 U.S.C. § 77c(a) (2) (exemption of securities issued or guaranteed by national bank); Section 77l(2) (exemption of securities so issued or guaranteed from civil liabilities); Section 78l(i) (Supp.1965) (administration and enforcement of specified registration and proxy provisions as relating to national banks vested in Comptroller of the Currency.) Had it been the intention of Congress to exempt national banks from the special venue provisions of the National Bank Act, it is reasonable to assume that they would explicitly have so provided.

"The presence of explicit exemptions in certain parts of a statute should make us hesitate to find a congressional intention to create implicit exemptions elsewhere in the same legislation." (Dissenting opinion of Judge Waterman in Silver v. New York Stock Exch., 302 F.2d 714, 721, 722 (2d Cir. 1962), rev'd, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

Application of the venue provisions of the Securities Exchange Act to national banks in contravention of the clear mandate of the National Bank Act is by no stretch of the imagination "necessary to make the Securities Exchange Act work" (373 U.S. at 357, 83 S.Ct. at 1257). In the light of the exemptions granted and the supervisory powers of the Comptroller, it seems unlikely that Congress considered national banks as potential violators of the securities laws. Indeed, counsel have referred the Court to no cases where actions have heretofore been maintained against national banks under the Securities Exchange Act.[10] While the limited venue provisions of the National Bank Act may cause some inconvenience to litigants, these arguments were disposed of in Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 83 S.Ct.

v. Ahrens, 212 F.2d 830 (5th Cir. 1954), aff'd sub nom. Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) are clearly distinguishable in view of the legislative history and clear evidence as to intent before the court.

9. Pg. 14. Many provisions of the National Bank Act make national banks, in important aspects, peculiarly local institutions. Cope v. Anderson, 331 U.S. 461, 467, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). See, e. g., 12 U.S.C. § 30 (Supp.1965) (may change name with approval of Comptroller, or location within city, town, or village with such approval, or within 30 miles of such limits by ⅔ vote of stockholders and approval of Comptroller); Section 32 (liabilities and suits not to be affected by change of name or location); Section 215 (Supp.1965) (consolidation of two or more national banks within same state); Section 215a (Supp.1965) (consolidation of state bank with national bank situated within the same state); Section 36 (Supp.1965) (retention or establishment of branch banks within limits of city, town or village in which bank

is established); Section 51 (capital and surplus requisites based on population of place where bank is organized); Section 72 (Supp.1965) (qualifications of directors as to residence). It must be remembered, however, that "[n]ational banks as quasi-public institutions, and for the purpose for which they are instituted are national in their character, and, within constitutional limits, are subject to the control of Congress, and are not to be interfered with by state legislative or judicial action, except so far as the lawmaking power of the government may permit." Van Reed v. People's Nat'l Bank of Lebanon, 198 U.S. 554, 557, 25 S.Ct. 775, 776, 49 L.Ed. 1161 (1905).

10. SEC v. Guild Films Co., 178 F.Supp. 418 (S.D.N.Y.1959), aff'd, 279 F.2d 485 (2d Cir.), cert. denied, 364 U.S. 819, 81 S.Ct. 52, 5 L.Ed.2d 49 (1960), cited by the Commission and in which the Commission obtained an injunction against one of two California banks, involved state and not national banks.

520, 9 L.Ed.2d 523 (1963), and Michigan Nat'l Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963) (Per curiam), and are, at best, "a matter for Congress to consider." Langdeau, supra, 371 U.S. at 563, 83 S.Ct. at 525. They are not guideposts to statutory construction.

 Moreover, as already noted, the provisions of one statute which specifically focus on a particular problem will be held to prevail over provisions of a different statute more general in its coverage; and legislation directed at a particular class takes priority over the general provisions of other, subsequently enacted statutes. In considering the instant case, it is helpful to bear in mind that definitions of what are special or general venue statutes can be misleading. The provision of any statute creating in addition to its substantive provisions a particular venue for actions brought under that statute is a "special venue statute." Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 228, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957)—("applicable, specifically, to *all* defendants in a particular type of actions * * *." (Ibid.) In this respect, the Securities Exchange Acts are special venue statutes. However, the venue provision of the National Bank Act is also a special venue statute in that it is applicable only to all types of actions brought against national banks. We are presented with a suit against a national bank to which, absent repeal, the all-inclusive provisions of the National Bank Act would apply. The Securities Exchange Act, by its terms, is of general application as to the defendants to which it is applicable. The later act, which covers only actions under its substantive provisions, clearly does not cover the subject of the earlier act which encompasses all types of actions. Moreover, in the instant case, in passing the earlier act the focus of Congress was directed at the special problems of national banks, whereas the later act focused on all defendants generally. Whether valid argument exists for amendment of either the National Bank Act or the Securities Exchange Act in the light of the expanding activities of national banks is a matter for Congress to determine.[11] Certainly, in the present posture of the record, I cannot conclude that such would be desirable, even were it within my province to so determine. Clearly both acts can exist together and their co-existence for over thirty years does not appear to have impeded in any way the enforcement of the Securities Exchange Act. Accordingly, I hold that the venue provisions of the National Bank Act (12 U.S.C. § 94) have been carried over into the venue provisions of the Securities Exchange Acts (15 U.S.C. §§ 77v(a), 78aa), that the later acts are limited accordingly by the exemption so granted to national banks, and that, therefore, suit against a national bank under the Securities Exchange Acts can only be maintained in the district in which it is established—in this case, the Eastern District of New York.

In the exercise of its discretion (28 U.S.C. § 1406(a); Rule 21, Federal Rules of Civil Procedure), the Court directs that the action be severed as against defendant Franklin National Bank and that the action against said defendant be transferred to the Eastern District of New York. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed. 2d 39 (1962). No compelling basis exists for transferring the action against Talcott—Goldberg v. Wharf Constructors, 209 F.Supp. 499 (N.D.Ala.1962); 1 Moore Federal Practice ¶ 0.146[5] at 1909 (2d ed. 1964).

---

11. While it is true that the Securities Acts should be liberally construed to carry out the expressed legislative policy, we are not confronted with a situation where the meaning of particular language is ambiguous or requires a broad interpretation in order to carry out such policy. See, e.g., SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–351, 64 S.Ct. 120, 88 L.Ed. 88 (1943); Creswell-Keith, Inc. v. Willingham, 264 F.2d 76 (8th Cir. 1959); Newman v. Weinstein, 229 F.Supp. 440 (S.D.Ill.1964).

In view of the foregoing, Talcott's motion for a severance is moot and is dismissed without prejudice.

So ordered.