394 F.2d 300
 BRUNS, NORDEMAN & CO., a Limited Partnership, Plaintiff-Appellant,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY, Defendant-Appellee, and
The Exchange Corp., Maurice Benjamin and Edward H. Levitt, Defendants.
 No. 344.
 Docket 31987.
 United States Court of Appeals Second Circuit.
 Argued March 20, 1968.
 Decided April 19, 1968.
 
 Spencer Pinkham, New York City (Colton & Pinkham and David J. Colton, New York City, of counsel), for plaintiff-appellant.
 John R. Hupper, New York City (Cravath, Swaine & Moore and Edwin A. Kilburn, New York City, of counsel), for defendant-appellee.
 Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and BLUMENFELD, District Judge.*
 FRIENDLY, Circuit Judge:
 
 
 1
 A federal court of appeals is here confronted for the first time with an issue that has provoked a difference of opinion among district courts: Do the special and properly wide venue provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 overcome the special and exceedingly narrow venue provisions[1] of the National Bank Act of 1864? Judge Ryan, in the District Court for the Southern District of New York, here followed the opinion of Judge Tenney of that district that they do not, General Electric Credit Corp. v. James Talcott, Inc., and Franklin National Bank, 271 F.Supp. 699 (1966), a view also adopted, as an alternative ground of decision, by Judge Horowitz in the Northern District of Illinois, Berman v. Thomson and The First National Bank of Boston et al., 284 F.Supp. 521. The opposite position was taken by Judge Coolahan of the District of New Jersey in Levin v. Great Western Sugar Company and Colorado National Bank of Denver, et al., 274 F.Supp. 974. We conclude with regret that the rulings upholding the claim of prevalence of the 1864 statute are right.
 
 
 2
 The complaint, summarily stated, alleged a conspiracy among four defendants to effectuate, in violation of §§ 5, 12(1) and 17(a) of the Securities Act of 1933 and § 10(b) of the 1934 Act, the sale of 10,000 shares of unregistered common stock of Canaveral Corporation, owned by defendant Levitt, apparently a Louisianian, and pledged by him to the defendant, American National Bank and Trust Company, "established" in Chicago. The conspiracy was to be accomplished as follows: Levitt was to sell the shares to Benjamin, president and principal owner of The Exchange Corporation, a Florida corporation, which was to pay Levitt out of the proceeds of a resale. Exchange was a customer of plaintiff, a New York broker-dealer. Pursuant to Exchange's instructions plaintiff sold the 10,000 shares in New York and sent the bank its draft for $65,000. The bank received this and forwarded to New York certificates for the shares, although knowing they were not registered and could not be sold without violating § 5 of the 1933 Act. The transfer agent for Canaveral refused to accept the certificates for transfer and plaintiff had to cover in a rising market, thereby sustaining a total loss (including the $65,000 payment) of $73,353.43. On motion of the Chicago National Bank Judge Ryan dismissed the complaint against it and entered the language appropriate for making the judgment final under F.R.Civ. P. 54(a).
 
 
 3
 Section 94 of the National Bank Act, originally adopted in 1864, 13 Stat. 99, 116, provides, so far as pertinent, that suits against a national bank
 
 
 4
 "may be had in any district or territorial court of the United States held within the district in which such association may be established, or in any State, county or municipal court in the county or city in which the association is located."
 
 
 5
 Section 22(a) of the Securities Act of 1933 provides that any suit or action to enforce any liability or duty created by the Act
 
 
 6
 "may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant, or wherever the defendant may be found."
 
 
 7
 Section 27 of the Securities Exchange Act of 1934 contains a provision with like or, indeed, even broader effect.
 
 
 8
 The contention that the provisions of the securities legislation should be read as overcoming the historic venue limitation whereby national banks can be sued only where "established" or "located" has much practical appeal. Plaintiff points out that actions wherein banks are sued for violation of the securities laws are typically multi-defendant actions, as illustrated by this case and the three others cited. Recognition of the probable multi-defendant character of securities suits was doubtless an important reason for the liberal venue provisions of § 22(a) of the 1933 Act and § 27 of the 1934 Act, in contrast to the restrictive requirement of the general venue statute, § 51 of the Judicial Code of 1911, 36 Stat. 1087, 1101, whereby federal question actions could be brought only in the district of which the defendant was an inhabitant. See also § 50. If appellee had been an Illinois state bank or trust company, plaintiff could have joined it in this action since the sale took place in New York. Of all the fagots in plaintiff's bundle, the national character of appellee's incorporation is surely the least important. Compare Liberty Natl. Bank & T. Co. v. Buscaglia, 21 N.Y.2d 357, 288 N.Y.S.2d 33, 235 N.E.2d 101 (1968); First Agricultural National Bank v. State Tax Comm., 229 N.E.2d 245 (Mass.Sup.J.Ct. 1967), appeal docketed, 389 U.S. 1033, 88 S.Ct. 774, 19 L.Ed.2d 819. Yet under the view upheld by the district judge, the plaintiff must resort to Illinois to sue appellee; it is exceedingly doubtful whether the 1933 Act would allow him to sue the other defendants there since the unlawful "offer or sale" apparently occurred in New York;[2] and the Illinois action could not be transferred to the Southern District of New York under 28 U.S.C. § 1404(a) since it could not "have been brought" in that district. The result thus is heavy inconvenience for the plaintiff and a burden for the federal courts, as against the burden on appellee — slight in this age of cheap long distance telephone rates, efficient methods for copying documents and jet air transport — of defending an action in New York rather than Chicago. While some of these factors also ease the burden of plaintiff in suing in Chicago, there remains the serious difficulty in proceeding there against the other defendants.
 
 
 9
 If we were writing on a clean slate, we would not find it difficult to reconcile § 94 of the National Bank Act with § 22(a) of the Securities Act. Since § 94 reads in terms of permission rather than prohibition, it would not be a great feat of construction to read this as fixing venue only when an applicable venue statute placed this on the basis of being a "resident" or "inhabitant," and not as proscribing other places of suit when the venue statute permitted this where an act was done. Such apparently was the view of Mr. Justice Black, joined by Mr. Justice Douglas, in Michigan Nat'l Bank v. Robertson, 372 U.S. 591, 594-595, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963). But, equally apparently, this was not the view taken by the majority in that case and in the slightly earlier one of Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed. 2d 523 (1963). True those decisions concerned the portion of § 94, added in 1864, 13 Stat. 99, permitting suits in certain state courts and not the portion, stemming from § 59 of the Act of 1863, 12 Stat. 665, providing that suits "may be had in any district or Territorial court of the United States held within the district in which such association may be established," and on the one occasion when the issue seems to have been squarely presented to the Supreme Court, it placed its decision in favor of the bank on lack of jurisdiction, and said it had "no occasion to consider" the issue of venue. Bank of America v. Whitney Central Nat'l Bank, 261 U.S. 171, 173, 43 S.Ct. 311, 67 L.Ed. 594 (1923). However, this court has given a construction to the clause of § 94 dealing with the venue of suits in a federal court quite as Draconian as the Supreme Court has done with respect to the state court clause, Leonardi v. Chase Nat'l Bank, 2 Cir., 81 F.2d 19, cert. denied, 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398 (1936), the Seventh Circuit has followed us, Buffum v. Chase Nat'l Bank, 192 F.2d 58 (1951), cert. denied, 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952), and it would indeed strain language to say that the same verbs were merely permissive with respect to suits in federal courts although prohibitory as to actions in state ones.
 
 
 10
 The Supreme Court has emphatically held that where Congress has dealt with a particular venue problem — here actions against national banks — broader language in a general venue statute will not overcome this even though literally applicable. Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942); Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). Indeed, appellant apparently concedes that the present general venue statutes, 28 U.S.C. § 1391(a) and (b), would not overcome § 94 of the National Bank Act even if it did not contain the words "except as otherwise provided by law."[3] Its contention is rather that the venue clauses of the two securities acts are themselves "special" venue statutes, and that in such a case the latter prevails. We think it inappropriate to resolve the issue so mechanically. The question rather is whether, given the seventy years of highly restricted venue of actions against national banks, there is sufficient reason to think that the Congresses which enacted the 1933 and 1934 securities legislation intended to carve out an exception for claims under the securities laws.
 
 
 11
 Nothing in the legislative history of the venue provisions of the 1933 and 1934 Acts indicates that Congress had given thought to the status of national banks. This is not surprising. National banks, under extensive supervision by the Comptroller of the Currency, were hardly envisioned as likely defendants in actions under the new securities laws. In fact, the House Committee Report reveals that Congress expressly relied on the Comptroller when, in the 1933 Act, it exempted securities of national banks from the requirement of registration, § 3(a) (2),[4] and, even more significantly, from civil liability for fraud in their distribution. § 12(2). H.Rep.No.85, 73 Cong., 1st Sess. 14 (1933). Such prospects as that a national bank as pledgee might knowingly participate in the attempted sale of an unregistered security, as here alleged, or that by acting as an intermediary in an exchange offer a national bank might join in a violation of § 10(b) of the 1934 Act were hardly in Congress' mind. Moreover, if the problem had occurred to Congress, we cannot be at all certain how that body would have wished it resolved; the Comptroller of the Currency now stoutly opposes the broad venue rule which the SEC advocates, see General Electric Credit Corp. v. James Talcott, Inc., supra, 271 F.Supp. at 701. Concededly the case is not one where adherence to § 94 of the National Bank Act prevents a suit against such a bank for violation of the securities legislation from being brought anywhere — a situation that led to the carving out of an exception to § 94 for "local actions." See Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880). Here suit against the bank in Chicago is not impossible but simply inconvenient. Appellant's case thus does not measure up to the standards laid down in United States v. Borden & Co., 308 U.S. 188, 198-199, 60 S.Ct. 182, 84 L.Ed. 181 (1939), see also Silver v. New York Stock Exchange, 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), to justify a holding of repeal — even partial repeal — by implication. Granted that the situation calls for remedy, this lies in Congress, whether by specification in the venue sections of the securities laws, by a more general overhaul of § 94 of the National Banking Act, see Mercantile Nat'l Bank v. Langdeau, supra, 371 U.S. at 563, 83 S.Ct. 520, or both.
 
 
 12
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the District Court of Connecticut, sitting by designation
 
 
 [1]
 The statutory history is recounted in Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 558-561, 83 S.Ct. 520, 9 L.Ed. 2d 523 (1963)
 
 
 [2]
 The situation would be different under § 27 of the 1934 Act which gives venue "in the district wherein any act or transaction constituting the violation occurred." Hooper v. Mountain States Securities Corp., 282 F.2d 195, 204-205 (5 Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). However, although the complaint sets forth a claim under § 10 of the 1934 Act, this might well be subject to motion
 
 
 [3]
 These words in the 1948 revision supplanted narrower language in § 51 of the 1911 Code, 36 Stat. 1087, 1101
 
 
 [4]
 It was only in 1955 that the Commission, reversing more than 20 years of contrary practice, limited § 3(a) (2) exemptions to issues of the bank's own securities and held that American Depository Receipts against outstanding foreign securities issued by a bank must be registered. 22 SEC Ann.Rep. 43 (1956). While this decision was undoubtedly sound on policy grounds, see 1 Loss, Securities Regulation 564-65 (1961), a review of the legislative history indicated that Congress did not specifically consider this problem, see Loss, supra, at 564 n. 18