TANGLEWOOD MALL, INC., a Virginia corporation, Plaintiff,

v.

The CHASE MANHATTAN BANK (NATIONAL ASSOCIATION), a national banking association organized under the laws of the United States of America, as Trustee, One Chase Manhattan Plaza, New York, New York, Principal Defendant,

and

Mountain Trust Bank, a Virginia corporation, Co-Defendant.

Civ. A. No. 73–C–143–R.

United States District Court, W. D. Virginia, Roanoke Division.

Feb. 7, 1974.

Robert E. Glenn, Eggleston & Glenn, Roanoke, Va., for Tanglewood Mall, Inc.

G. Marshall Mundy, Roanoke, Va., for The Chase Manhattan Bank.

Holman Willis, Jr., Roanoke, Va., for Mountain Trust Bank.

## OPINION

TURK, Chief Judge.

The background of this case is relevant to the present disposition and will be briefly stated. The plaintiff in this case, Tanglewood Mall, Inc. (hereinafter referred to as "Tanglewood"), originally brought suit on May 29, 1973 in the Hustings Court for the City of Roanoke, Virginia against Chase Manhattan Bank (hereinafter referred to as "Chase") and Mountain Trust Bank. So far as is here relevant, this complaint recited the following facts and allegations: Chase had agreed to make a loan of $14,200,000 to Tanglewood for the financing of the Tanglewood Mall Shopping Center; under the terms of this loan commitment, Tanglewood's per-

formance was secured by a letter of credit issued by Mountain Trust Bank in favor of Chase for $426,000; this letter of credit provided that Chase could draw on it if Tanglewood failed to close the loan for any reason other than Chase's default; Chase breached its agreement with Tanglewood in numerous respects; and Chase had advised Tanglewood that it must forfeit the $426,000 deposit under the agreement between the parties. In addition to unspecified damages, Tanglewood asked for both a preliminary and permanent injunction restraining Chase from making demand on the letter of credit or assigning or otherwise disposing of its rights thereunder and restraining Mountain Trust Bank from making payment on the letter of credit. On May 29, 1973 an ex parte order was entered by the Hustings Court granting a temporary restraining order prohibiting payment under the letter of credit.

Chase responded to this restraining order by filing a plea in abatement contending that since it was a national bank it was not subject to suit other than where it was "established" by virtue of § 94 of the National Banking Act, 12 U.S.C. § 94. Tanglewood countered by asserting that Chase's activity in Virginia had been so extensive that it must be deemed to have waived the venue protection of § 94. After receiving depositions and hearing arguments relative to the extent of Chase's activities in Virginia, the court dismissed Tanglewood's action against Chase on the ground that it violated § 94.

■ Meanwhile on September 24, 1973, three days before the hearing on Chase's plea in abatement, Tanglewood filed the present action in the Circuit Court for the City of Roanoke. This action was in the form of a Bill of Attach-

ment and alleged that Chase, as trustee, was indebted to Tanglewood in the amount of at least $634,000 and prayed for attachment of the $426,000 owing to Chase by Mountain Trust Bank. The substantive allegations in the Bill of Attachment were the same as those in the earlier Bill of Complaint. Chase filed a motion to quash the attachment on the ground that the assets of a national bank are exempt from attachment, but before the court ruled, Chase removed the case to this court where it filed the motion to dismiss which is now the subject of this opinion.[1]

■ Chase first asserts in support of its motion to dismiss the same ground which was successfully raised in the Hustings Court for the City of Roanoke, to-wit: That it is a national bank established in the City, County and State of New York and as such may not be sued in Virginia absent its consent. This argument is based on Title 12 U.S.C. § 94 which provides:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal Court in the county or city in which said association is located having jurisdiction in similar cases."

It is clear that under the above statute a nationally chartered bank may be sued only in the federal court in which it is "established", which is the place specified in its charter. Buffum v. Chase National Bank, 192 F.2d 58 (7th Cir. 1951), cert. denied, 342 U.S. 944, 72 S. Ct. 558, 96 L.Ed. 702 (1952).

■ Tanglewood does not dispute the fact that Chase is established in

---

1. Contrary to Chase's contention in its petition for removal, this case does not arise under the Constitution and laws of the United States. It does appear, though, that this court has original jurisdiction under 28 U.S.C. § 1332 in that the suit is between citizens of different states and the amount in controversy exceeds $10,000. Mountain Trust

Bank is apparently only a stakeholder against whom no substantive claims have been made, and thus its role in this case does not destroy the jurisdiction of this court under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441. Clarkson v. Finance Company of America at Baltimore, 328 F.2d 404 (4th Cir. 1964).

New York but argues that Chase's action in removing this case from state to federal court pursuant to 28 U.S.C. § 1441 constituted a waiver of the restrictive venue provision of 12 U.S.C. § 94. There is no doubt that the venue restriction in § 94 is personal and may be waived. First National Bank of Charlotte v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed.2d 282 (1889); Buffum v. Chase National Bank, 192 F.2d 58 (7th Cir. 1951), cert. denied, 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952). Tanglewood has cited numerous cases for the proposition that removal of a case from state to federal court constitutes a waiver of a venue privilege or renders other venue privileges inapplicable once a case has been removed.[2] e. g., In re Moore, 209 U.S. 490, 28 S.Ct. 585, 52 L.Ed. 904 (1908); General Investment Company v. Lake Shore & Michigan Southern Railway Company, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922); Lee v. Chesapeake & Ohio Railway Co., 260 U.S. 653, 43 S.Ct. 230, 67 L.Ed. 443 (1923); Seaboard Rice Milling Company v. Chicago, Rock Island & Pacific Railway Company, 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633 (1926); Polizzi v. Cowles Magazine, 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953). The difficulty with these cases as well as others cited by Tanglewood is that they deal with a conflict between the general venue provisions governing diversity suits brought in federal court, now 28 U.S.C. § 1391, and the venue provision governing suits removed from state to federal court, now 28 U.S.C. § 1441. In such cases § 1391 has no application and the venue provision of § 1441 is given effect simply because § 1391 only governs the venue of cases "brought" in the federal district court. It is clear that the case at bar is not governed by such cases for the reason that § 94 governs the venue of actions against national banks whether brought in either state or federal court. Thus the question of venue in the federal court in this case is identical with that in the state court—namely whether the venue is proper under § 94. This is clearly different from cases originally brought in state court and removed to federal court, in which case venue is not controlled by federal law until the case is removed.

[redacted] The conflict between the venue provision of § 1441 and that in § 94 once a case such as this is removed must be resolved in favor of § 94 on the authority of cases such as Bruns, Nordeman & Co. v. American National Bank & Trust Co., 394 F.2d 300 (2d Cir. 1968).[3] The court there upheld dismissal for lack of venue of a suit by a broker-dealer against a national bank holding that § 94 took precedence over the venue provisions of the Securities Act of 1933 (15 U.S.C. § 77v) and the Securities Act of 1934 (15 U.S.C. § 78aa).

> "The Supreme Court has emphatically held that where Congress has dealt with a particular venue problem—here actions against national banks—broader language in a general venue statute will not overcome this even though literally applicable. Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942); Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957)." 394 F.2d at 303.

[redacted] Although there are apparently no reported cases discussing the question of whether removing a case from state to federal court amounts to a waiver of the venue privilege in § 94, consideration of those cases discussing waiver of the venue privileges in § 94 under other circumstances leads to the conclusion that waiver has not occurred in the

2. Cases discussing whether a defendant's removal of a case from state to federal court amounts to a waiver of federal venue are collected in Annot., 152 A.L.R. 972 (1944).

3. e. g., United States National Bank v. Hill, 434 F.2d 1019 (9th Cir. 1970); Klein v. Bower, 421 F.2d 338 (2d Cir. 1970).

case at bar.[4] In Buffum v. Chase National Bank, 192 F.2d 58 (7th Cir. 1951), cert. denied, 342 U.S. 944, 72 S. Ct. 558, 96 L.Ed. 702 (1952) the court stated with respect to the waiver of the venue privilege afforded by § 94.

"Waiver is a voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed. 67 C.J. 289. It may be expressed formally or implied as a necessary consequence of the waiver's conduct inconsistent with an assertion of retention of the right. It must be proved by the party relying on it. And if the only proof of intention to waive rests on what a party does or forbears to do, his act or omissions to act should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible. 67 C.J. 311 and cases there cited." 192 F.2d at 60–61.

It is clear that in this case Chase's act in removing this suit from state to federal court was not inconsistent with the retention of its venue right contained in § 94. Chase has not proceeded with the merits of this case, but as with its plea in abatement filed in the state court in the first case, it has asserted its rights under § 94. Chase could have proceeded to challenge the venue of this suit in state court, but it had every right to remove the case pursuant to 28 U.S.C. § 1441, and there is no reason why it should have to forfeit the privilege of venue in § 94 in order to avail itself of the right afforded by the removal statute. This court finds nothing in Chase's actions in removing this case to be indicative of an intent to relinquish its right to challenge the venue of this suit, and accordingly does not find that Chase has waived its right to venue in 12 U.S. C. § 94.

■ Tanglewood next contends that even if Chase did not waive its right to the venue provision of § 94, the nature of this case is such to bring it within the exception to § 94 set forth in Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880). In carving out an exception to the venue privilege afforded national banks, the Court in Casey was concerned with those cases, which, in the absence of such an exception, could not be prosecuted at all.

"Local actions are in the nature of suits in rem, and are to be prosecuted where the thing on which they are founded is situated. To give the act of Congress the construction now contended for would be in effect to declare that a national bank could not be sued at all in a local action where the thing about which the suit was brought was not in the judicial district of the United States within which the bank was located. Such a result could never have been contemplated by Congress." 102 U.S. at 68.

In attempting to show that the present case comes within the Casey exception, Tanglewood cites authority to the effect that its suit is an in rem proceeding because it involves the garnishment of property of or debts owing to a non-resident. Tanglewood argues that since this is an in rem proceeding, it could not have been brought wherever

4. e. g., First National Bank of Charlotte v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889) (waiver by bank going to trial on the merits without claiming the venue privilege) ; Buffum v. Chase National Bank, 192 F.2d 58 (7th Cir. 1951), cert. denied, 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952) (waiver limited to consent given in connection with trust business) ; Fisher v. First National Bank of Omaha, 338 F.Supp. 525 (S.D.Iowa 1972) (no waiver by operation of Bank-Americard plan) ; TPO, Inc. v. Federal Deposit Insurance Corporation, 325 F.Supp. 663 (S.D.N.Y.1971) (no waiver by bank's action in moving to dismiss for lack of jurisdiction over the person) ; Rome v. Eltra Corporation, 297 F.Supp. 314 (E.D. Pa.1969) (no waiver by bank in assuming duties of indenture trustee under Trust Indenture Act). Other cases are collected in Annot., 1 A.L.R.3d 904 (1965).

the principal defendant could have been found. Even though it may be technically correct under state law to label this suit *in rem*, it is nevertheless an action for breach of an agreement and could as well have been brought in New York as in Virginia. That this action is nothing more than a breach of contract action is pointed up by the virtually identical nature of the substantive allegations in the Bill of Complaint filed in the Hustings Court for the City of Roanoke in May, 1973 and those in the Bill of Attachment in this case. To accept Tanglewood's argument that by merely attaching a debt due a bank the suit becomes *in rem* and "local" and thus within the *Casey* exception, would allow banks to be sued wherever they have debts due. Since a large portion of the assets of any bank consist of debts due it, such a holding would effectively emasculate the strict, mandatory venue privilege in 12 U.S.C. § 94 and be contrary to the intention of Congress as interpreted by the Supreme Court in Mercantile National Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963). The narrow exception from Casey v. Adams serves the purpose of preventing banks from avoiding suit altogether by relying on § 94, and Tanglewood's attempt to come within this exception by use of a Bill of Attachment must fail for it is clear that forums other than this one are readily available to adjudicate the underlying dispute in this case.

Inasmuch as the court has determined that Chase's challenge to venue in this case is well taken, the alternative argument that the attachment of the proceeds of the letter of credit is prohibited by § 91 of the National Banking Act, 12 U.S.C. § 91, need not be decided.

For the reasons and authority stated, the motion of Chase Manhattan Bank for an order pursuant to Rule 12(b) dismissing this case on the basis of lack of venue will be granted.